## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CRIMINAL ACTION** |
| | ) | |
| v. | ) | No. 12-20083-02/04-KHV |
| | ) | |
| ROOSEVELT RICO DAHDA and | ) | |
| JUSTIN CHERIF PICKEL, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

On July 23, 2014, a jury found Roosevelt Rico Dahda guilty of conspiracy to possess and distribute more than 1,000 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii) and (b)(1)(A)(vii).  The jury also found Dahda guilty of nine other drug-related counts. The jury found Justin Cherif Pickel guilty of conspiracy to manufacture and to possess with intent to distribute more than 1,000 kilograms of marijuana and to maintain drug-involved premises, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), (b)(1)(A)(vii) and 856.  The jury also found Pickel guilty of one count of use of a communication facility in committing a drug offense.  This matter comes before the Court on Dahda's Motion For New Trial (Doc. #1436) and Pickel's Motion For New Trial (Doc. #1438), both filed August 6, 2014, which the Court construes as motions for

acquittal and for a new trial.[1]  For the reasons set forth below, the Court finds that the motions should be overruled.

## **Legal Standards**

In reviewing a motion for judgment of acquittal, the court views the evidence in the light most favorable to the government.  United States v. Ahrensfield, 698 F.3d 1310, 1323-24 (10th Cir. 2012);  United States v. Hughes, 191 F.3d 1317, 1321 (10th Cir. 1999).  The court must grant a motion for judgment of acquittal when the evidence is insufficient to sustain a conviction.  Fed. R. Crim. P. 29(a).  On the other hand, the court must uphold the jury's guilty verdict if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  United States v. Haber, 251 F.3d 881, 887 (10th Cir. 2001) (citation and quotation marks omitted).  The evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt.  United States v. Wood, 207 F.3d 1222, 1228 (10th Cir. 2000).  Simply put, the court must ask only whether a reasonable jury could find defendant guilty beyond a reasonable doubt, "taking the evidence – both direct and circumstantial, together with the reasonable inferences to be drawn therefrom – in the light most favorable to the government."  United States v. Vallejos, 421 F.3d 1119, 1122 (10th Cir. 2005) (quoting United States v. Scull, 321 F.3d 1270, 1282 (10th Cir. 2003)).  If the government proof meets this standard, the court must defer to the jury verdict.  Id.

---

[1]      In addition to specific grounds for a new trial, Dahda and Pickel each state that they incorporate "each and every issue" previously raised in pretrial motions or at trial.  They also state that they join in post-trial motions filed by each other, and by co-defendant Los Rovell Dahda.  The Court first notes that Los Rovell Dahda did not file any post-conviction motion.  Further, the Court finds that defendants' blanket assertions are insufficient to preserve or present viable post-conviction claims.

2

Rule 33, Fed. R. Crim. P., provides that the Court may grant a motion for a new trial "if the interest of justice so requires." A motion for new trial under Rule 33 is not regarded with favor and is granted with great caution. United States v. Herrera, 481 F.3d 1266, 1269-70 (10th Cir. 2007); United States v. Trujillo, 136 F.3d 1388, 1394 (10th Cir. 1998). The decision whether to grant a motion for new trial is committed to the sound discretion of the trial court. United States v. Cesareo-Ayala, 576 F.3d 1120, 1126 (10th Cir. 2009).

### Facts

At trial the government presented overwhelming evidence from law enforcement officers and others concerning a conspiracy to manufacture, possess with intent to distribute and distribute marijuana and maintain drug-involved premises in Lawrence, Kansas. The government introduced wiretap recordings of hundreds of phone calls regarding distribution of marijuana, scores of exhibits including large volumes of marijuana which it confiscated during the investigation and hundreds of documents related to the conspiracy. The government also presented testimony by a series of cooperating co-defendants who implicated Dahda and Pickel in the conspiracy.

## I.      Dahda's Motion For Judgment Of Acquittal

Dahda asserts that the government presented insufficient evidence that he engaged in a conspiracy to possess with intent to distribute and to distribute marijuana. In addressing the sufficiency of the evidence, the Court determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Haber, 251 F.3d at 887.[2]

---

[2]      Dahda also asserts a fatal variance between the evidence adduced at trial and the facts alleged in the indictment. United States v. Ailsworth, 138 F.3d 843, 848 (10th Cir. 1998) (variance violates Fifth Amendment because defendant is tried on charges different from those handed down by grand jury). A variance is reversible error only when it affects the substantial rights (continued...)

To obtain a conviction for conspiracy, the government must prove the following elements: (1) an agreement by two or more persons to violate the law; (2) defendant knew the essential objectives of the conspiracy; (3) defendant knowingly and voluntarily took part in the conspiracy; and (4) interdependence among the conspirators.  United States v. Cornelius, 696 F.3d 1307, 1317 (10th Cir. 2012); United States v. Caldwell, 589 F.3d 1323, 1329 (10th Cir. 2009).

Defendant first asserts that the government did not produce evidence of an agreement to engage in a single large conspiracy to possess and distribute marijuana.  He points out that many of the alleged members of the conspiracy did not know him and that his name did not appear in the drug ledgers of two of the main cooperating witnesses – Chad Bauman and Peter Park.  Defendant may be a member of a conspiracy, however, without knowing its full scope, or all of its members, and without participating in all of the activities or over the whole duration of the conspiracy.  United States v. Acosta-Gallardo, 656 F.3d 1109, 1123 (10th Cir. 2011).  Here, the government presented abundant evidence that defendant entered an agreement with co-defendants to violate the law by possessing with intent to distribute and distributing marijuana.

Defendant next argues that the government failed to produce evidence that he knew the essential objectives of the conspiracy.  Under the essential objective element, the government must prove that the alleged conspirator had a general awareness of both the scope and the objective of the enterprise.  United States v. Pulido-Jacobo, 377 F.3d 1124, 1130 (10th Cir. 2004).  A jury may

---

²(...continued)

of the accused.  Id.  Here, Count I charged defendants with conspiracy to manufacture marijuana, to possess with intent to distribute and to distribute marijuana and cocaine and to maintain drug-involved premises.  Defendant asserts a fatal variance in that the evidence at trial did not establish that he was involved in a conspiracy regarding cocaine. The government chose not to try to prove a cocaine conspiracy at trial.  On these facts, the Court disagrees that Dahda's trial implicates Fifth Amendment issues on account of the alleged variance.

presume that defendant is a knowing participant in the conspiracy when he acts in furtherance of its objective.  United States v. Carter, 130 F.3d 1432, 1440 (10th Cir. 1997).  Defendant correctly points out that the government did not produce evidence that he was involved in a conspiracy to possess and distribute both marijuana and *cocaine*, as charged in part of Count I of the Superceding Indictment.  He argues that the government therefore failed to show that he knew the essential objective of the charged conspiracy.  See United States v. Evans, 970 F.2d 663, 669, 674 (10th Cir. 1992).

Defendant relies on United States v. Dellosantos, 649 F.3d 109 (1st Cir. 2011).  In Dellosantos, the government attempted to implicate defendants in a single conspiracy which involved a Massachusetts-based operation to distribute cocaine and a Maine-based operation to distribute both cocaine and marijuana.  Defendants argued that there was insufficient evidence of a single overarching conspiracy, and the First Circuit agreed.  See id. at 119.  Defendant essentially argues that here, the government did not produce evidence of a single conspiracy to distribute both marijuana and cocaine but instead presented evidence of multiple conspiracies.

To determine the existence of a single conspiracy versus multiple conspiracies, the Court examines the nature and purpose of the agreement.  United States v. Mazzanti, 888 F.2d 1165, 1174 (7th Cir. 1989).  Multiple conspiracies are present if co-conspirators make separate agreements to effectuate distinct purposes.  United States v. Thornton, 197 F.3d 241, 254 (7th Cir. 1999) (single conspiracy where defendant's activities with co-conspirators geared toward common purpose of distributing cocaine and crack).  Here, Count I charged a conspiracy in the conjunctive – to possess with intent to distribute and to distribute both marijuana and cocaine.  At trial, however, the government proceeded only on the marijuana conspiracy claim.  See United States v. Powell, 226

5

F.3d 1181, 1192 n.4 (10th Cir. 2000) (crime set out in statute disjunctively "may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive").  The government produced evidence that the conspirators had the common purpose of obtaining and distributing high grade marijuana from various sources in Canada and California.  The method of operation and common purpose established a single conspiracy.  Based upon the evidence presented, the Court instructed the jury regarding conspiracy to possess with intent to distribute and to distribute marijuana, but not cocaine.

Defendant asserts that the government did not show evidence of interdependence, because it did not show that each alleged co-conspirator depended on the operation of the other alleged co-conspirators.[3]  To establish interdependence, defendant's actions must facilitate the endeavors of other co-conspirators or facilitate the venture as a whole.  United States v. Heckard, 238 F.3d 1222, 1230 (10th Cir. 2001).  Interdependence exists where each co-conspirator's actions constitute essential and integral steps toward the realization of a common illicit goal.  Pulido-Jacobo, 377 F.3d at 1131.

Here, the government presented ample evidence of interdependence among the co-conspirators.  Over the course of trial, numerous witnesses testified concerning the overall operation of the conspiracy and the role of the various co-conspirators.  Further, the government presented overwhelming evidence of defendant's involvement in the conspiracy to possess with intent to distribute and to distribute high-grade marijuana.  The direct and circumstantial evidence presented in this case was more than sufficient to establish the elements of the conspiracy.

---

[3]      Defendant correctly points out that many co-defendants had no knowledge of him. The law is clear, however, that defendant need not know all members of a conspiracy.  See United States v. Caro, 965 F.2d 1548, 1556 (10th Cir. 1992).

## II.     Dahda's Motion For New Trial

### A.     Admission Of Evidence Of Prior Imprisonment

During pretrial proceedings, the Court sustained defendant's motion in limine to exclude evidence that he had prior convictions and had served time in prison.

On June 2, 2014, the government called co-defendant Adam Christiansen as a witness.  For more than an hour, Christiansen testified about his involvement with the charged conspiracy.  On June 3, 2014, the government continued Christensen's direct examination.  Government counsel asked Christensen how he had met Dahda.  Christensen replied that he and Roosevelt had worked together in Topeka, Kansas.  Government counsel then asked Christensen, "[a]nd how did it occur that Roosevelt Dahda became involved with you in that situation?"  Christensen responded, "[h]e had just gotten out of prison and he was working."  Defense counsel for Los Rovell Dahda objected, and asked to approach.

Outside the presence of the jury, counsel for Roosevelt Dahda made an oral motion for a mistrial.  Government counsel expressed surprise at Christensen's testimony, and stated that she had repeatedly cautioned all witnesses not to mention defendants' prior convictions.  The Court found these representations to be credible.  The Court informed counsel that the Court would take a recess to allow the parties to discuss how to proceed.  The Court then briefly instructed the jury to disregard the comment, and told the jury that the trial would be recessed for 45 minutes so that the Court could attend to other matters.

After the recess, and again out the presence of the jury, the Court heard brief argument by counsel on the issue of a mistrial and a cautionary instruction.  The Court ruled that it would take the motion for mistrial under advisement.  Although he initially objected to a further cautionary

instruction, counsel for Roosevelt Dahda ultimately asked the Court to give the jury a further cautionary instruction before proceeding with evidence.  The Court then instructed the jury as follows:

> Members of the jury, before we get back into the evidence, I want to say something [regarding] the testimony you heard right before the break to the effect that Roosevelt Dahda had just been released from prison.  We have very clear Rules of Evidence in a federal criminal trial.  One of them is that we don't typically admit evidence that somebody has a prior conviction because it can influence the jury to think well, if he committed one crime, he must be more likely to have committed another crime.  That is completely false reasoning and so we do not let that kind of evidence come into court.  And this witness was instructed not to mention that.  So this is not something that we expected to have come up during the course of the trial.  When I instructed you to disregard that evidence, I want to underscore how really important that is. It would be so unfair to Mr. Dahda if you were to take that into account in your deliberations or in your discussions in the jury room.  Because the fact that he might have committed some other crime, we don't even know what it was, does not make it more or less likely that he has committed the crimes he's charged with in this case. Do you understand what I'm saying?[4]  I'm counting on you[;] we have invested a lot of time in this trial and I'm counting you to follow this instruction.[5]  There's no instruction that's more important than any other instruction.  But this is critical.  Is anybody going to have a problem following that instruction?  I see everybody shaking their heads.  All right.  Let's resume.

As noted, Roosevelt Dahda argues that Christiansen's statement that he met him after his release from prison was sufficiently prejudicial to require a mistrial.

The district court only has discretion to grant a mistrial if an error impaired defendant's right to a fair and impartial trial.  United States v. Kravchuk, 335 F.3d 1147, 1155 (10th Cir. 2003); see also United States v. Laymon, 621 F.2d 1051, 1053 (10th Cir. 1980) (trial judge in best position to evaluate effect of offending evidence on jury).

While the Federal Rules of Criminal Procedure offer little guidance on when judges should grant mistrial motions, we have focused on whether [defendant's] right to a

---

[4]     Each of the jurors nodded heads up and down in response to this question.

[5]     June 3, 2014 was the 20th day of trial.

fair and impartial trial was impaired. . . .   [M]otions for mistrial . . . call for an examination of the prejudicial impact of an error or errors when viewed in the context of an entire case.

United States v. Meridyth, 364 F.3d 1181, 1183 (10th Cir. 2004); United States v. Gabaldon, 91 F.3d 91, 93-94 (10th Cir. 1996).

The Tenth Circuit considers three factors in reviewing a district court decision whether to grant a mistrial when a government witness offers improper testimony in violation of a court order. See United States v. Garton, 336 Fed. Appx. 804, 810 (10th Cir. 2009).  The relevant factors include (1) whether the prosecutor acted in bad faith, (2) whether the district court limited the effect of the improper statement through its instructions to the jury and (3) whether the improper remark was inconsequential in light of the other evidence of defendant's guilt.  Id.[6]  Here, based on all of the circumstances, the Court finds that defendant is not entitled to a mistrial.

First, the government did not act in bad faith and did not intentionally elicit the improper statement.  In fact, government counsel expressed genuine surprise and dismay with Christiansen's testimony.

Second, the Court immediately gave the jury a limiting instruction.  After the recess, at defendant's request, the Court gave a more detailed cautionary instruction as quoted above.  The Tenth Circuit has found that similar instructions are "ordinarily sufficient to cure any alleged prejudice to the defendant and declaring a mistrial is only appropriate where a cautionary instruction is unlikely to cure the prejudicial effect of an error."  United States v. Wilson, 503 Fed. Appx. 598,

---

[6]     The Sixth Circuit has set out  two additional factors: whether the government solicited the improper remark and whether the government's line of questioning was reasonable. See Zuern v. Tate, 336 F.3d 478, 485 (6th Cir. 2003) (in habeas context).  The Tenth Circuit has noted that while these additional inquiries seem helpful, they are subsumed within the "bad faith" factor.  United States v. Meridyth, 364 F.3d 1181, 1183 n.3 (10th Cir. 2004).

609 (10th Cir. 2012) (unpublished); <u>United States v. Peveto</u>, 881 F.2d 844, 859 (10th Cir. 1989));

<u>see</u> <u>United States v. Caballero</u>, 277 F.3d 1235, 1243 (10th Cir. 2002) (presume jurors will follow

clear instructions to disregard evidence unless "overwhelming probability" that jury will be unable

to follow instructions and strong likelihood that effect of evidence would be devastating to

defendant); <u>United States v. Adipietro</u>, 983 F.2d 1468, 1477 (8th Cir. 1993) (instruction cured any

error arising when witness referred to defendant's prison sentence).

Third, at trial, the government presented overwhelming evidence against all three defendants.

Given the strength of the evidence, Christiansen's statement regarding Roosevelt Dahda's prior

prison stay was inconsequential.  <u>See</u> <u>United States v. Martinez-Simental</u>, 431 Fed. Appx. 639 (10th

Cir. 2011) (unpublished); <u>cf.</u> <u>United States v. Sands</u>, 899 F.2d 912, 915 (10th Cir. 1990) (district

court erred in denying mistrial in murder trial where government negligently elicited testimony by

two different witnesses that defendant had been incarcerated; court gave no cautionary instruction

and evidence of guilt was not overwhelming).

     B.     <u>Cross-Examination Of Cooperating Witnesses</u>

          1.     Questions Regarding Potential Penalties For Charges To Be Dismissed Under Plea Agreements

Dahda asserts that the Court denied his Sixth Amendment right to confront witnesses when

it limited his questioning of cooperating witnesses concerning potential reductions in sentences

which they could receive in exchange for testifying.  Whether a trial court has abused its discretion

in limiting the cross-examination of a witness for bias depends on  "whether the jury had sufficient

other information before it, without the excluded evidence, to make a discriminating appraisal of the

possible biases and motivation of the witnesses." <u>United States v. Chandler</u>, 326 F.3d 210, 219 (3rd

Cir. 2003).  With respect to cross-examination of cooperating witnesses who expected to obtain or

had obtained a benefit from the government in exchange for testimony, the critical question is

whether defendant had an opportunity to examine the witness' subjective understanding of the bargain with the government, because that understanding is probative on the issue of bias. Id. at 220 (further citation and quotations omitted).

Here, the Court allowed defense counsel to ask cooperating witnesses about reductions in charges and penalties which they might receive, thus allowing the jury to evaluate their motives to cooperate. Some of defense counsel's proposed questions, however, sought to suggest that cooperators had faced additional consecutive or stacked sentences before their charges were dismissed. Under the current sentencing scheme, these questions sought to elicit misleading testimony.[7] Thus, the Court properly prevented defense counsel from creating a false impression as to the extent of the benefit that cooperators would receive.

### 2.    Cross-Examination Of Domenic Massat

Defendant asserts that the Court improperly restricted his cross-examination of Domenic Massat about his violations of the conditions of supervised release. Defendant contends that Massat's violations constituted "specific instances of conduct" that were admissible on the issue of truthfulness or untruthfulness. The Court allowed defendant to point out that Massat had violated terms of his supervision but Dahda has not articulated how any of these violations were probative of veracity. The Court determined that such specific instances of misconduct were not probative of Massat's truthfulness and appropriately limited the questioning.

### C.    Exclusion Of Testimony Of Rebuttal Witness

---

[7]    For example, defendant maintains that Bauman was facing 298 years and that Park was facing 185 years. Doc. #1437, at 5. This is not a correct assessment of the potential penalties that these two individuals faced under the United States Sentencing Guidelines or the statutory sentencing scheme.

The government presented evidence of a phone conversation in which defendant stated that he had 16 "stacks." A government witness testified that a "stack" is $1,000 in United States currency. Defendant sought to call a witness to testify that during that same time frame, defendant had earned $16,000 in a lawful manner. The Court excluded the proffered testimony, finding that it was not proper rebuttal evidence and that defendant had not endorsed the witness.

Defendant asserts that the Court erred in preventing him from presenting testimony that "16 stacks" was not a reference to drug money. At trial, however, defense counsel did not explain how the proffered testimony would refute any evidence which the government had presented. Further, although defendant conceded that he had known about this potential defense witness for a significant time, defendant never listed him as a trial witness. The Court thus properly excluded the testimony. Further, given the overwhelming evidence against defendant, any error in excluding such evidence was harmless.

### D.   Allowing Trial To Proceed Despite Jury Frustration

Defendant asserts that the Court erred in allowing the trial to continue after the jury expressed frustration with the length of the trial. A number of unforeseen delays – including delays due to health issues of jurors, family members of counsel and court staff – lengthened the span of the trial past the projected end date. Regardless, the Court did not observe anything which substantiates defendant's suggestion that the jury rushed to reach a verdict. To the contrary, the jury deliberated over parts of several days, and it acquitted defendants on many charges. Nothing indicates that jury frustration with the length of trial affected its deliberations.

### E.   Jury Instruction On Conspiracy/Variance

In reviewing challenges to jury instructions, the Court considers the jury instructions as a whole and determines if the jury was likely misled. See United States v. Smith, 13 F.3d 1421, 1424

(10th Cir. 1994).  A new trial is not appropriate where the instructions as a whole properly state the law and provide the jury an "intelligent, meaningful understanding of the applicable issues and standards."  United States v. Winchell, 129 F.3d 1093, 1096 (10th Cir. 1997).  The Court will grant a new trial only if it has "substantial doubt that the jury was fairly guided."  Smith, 13 F.3d at 1424.

Defendant contends that the government demonstrated multiple, independent conspiracies, rather than the single charged conspiracy, and asserts that the Court should have given the jury a multiple conspiracy instruction.  The Court disagrees.

The Tenth Circuit does not require a multiple conspiracy instruction as long as the instructions inform the jury that "the government had the burden of proving beyond a reasonable doubt the [single] conspiracy as alleged, and that the evidence should be considered separately as to each defendant."  Evans, 970 F.2d at 675 (further quotations omitted).

Here, the instructions informed the jury that the government had the burden of proving the conspiracy beyond a reasonable doubt.  Instruction No. 15 informed the jury that "[t]he government has the burden of proving beyond a reasonable doubt every essential element of the crime charged."  Instruction No. 19 informed the jury that Count 1 charged conspiracy to manufacture, possess with intent to distribute or distribute marijuana, or to maintain drug-involved premises.  Instruction No. 20 included the statement that "[m]ere similarity of conduct among various persons, the fact they may have associated with each other, or that they may have assembled together and discussed common aims and interests, is not necessarily proof of a conspiracy."  Instruction No. 14 explained that defendant was only on trial for the acts alleged in the indictment.[8]  The Court finds that

---

[8]      The verdict form asked the jury to return special verdicts on each of the four alleged objectives of the conspiracy, and the jury found Dahda guilty of a conspiracy to possess marijuana with intent to distribute it and to distribute marijuana.

defendant was not entitled to a multiple conspiracy instruction.  See, e.g., Evans, 970 F.2d at 674-75 (rejecting argument that district court erred in failing to instruct jury on multiple conspiracies).

      F.       Accumulation Of Error

Cumulative error analysis does not apply to the cumulative effect of non-errors.  Because Dahda has shown no error in the trial, the Court need not engage in a cumulative error analysis. United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990).  Further, even if Dahda had shown that any of the matters above constitute error, such error did not affect his substantial rights.

**III.**    **Pickel's Motion For Judgment Of Acquittal**

      A.       Motion To Dismiss Charges Based On Insufficient Evidence

Pickel argues that the Court erred in overruling his motion to dismiss at the end of the government's case because the government did not present sufficient evidence that he was guilty of the conspiracy charged in Count 1.  Pickel points out that most of the members of the alleged conspiracy did not know him.  Defendant, however, may be a member of a conspiracy without knowing its full scope, or all of its members, and without participating in all of the activities or over the whole duration of the conspiracy.  United States v. Johnson, 54 F. 3d 1150, 1154 (4th Cir. 1995). Here, the government presented ample evidence from which a jury could find that defendant entered an agreement with co-defendants to violate the law by manufacturing and distributing marijuana and maintaining drug-involved premises.

Defendant also asserts that the government failed to produce evidence that he knew the essential objectives of the conspiracy.  Under the essential objective element, the government must prove that the alleged conspirator had a general awareness of both the scope and the objective of the enterprise.  Pulido-Jacobo, 377 F.3d at 1130.  A jury may presume that defendant is a knowing participant in the conspiracy when he acts in furtherance of the objective of the conspiracy.  United

States v. Johnson, 42 F.3d 1312, 1319 (10th Cir. 1994); Carter, 130 F.3d at 1440.

Defendant correctly points out that the government did not produce evidence that he was involved in a conspiracy with the objective to possess and distribute cocaine.  He argues that the government thus failed to show that he knew the essential objective of the charged conspiracy, citing Evans, 970 F.2d at 669.  As noted, although the government charged a conspiracy to distribute cocaine and to manufacture, possess with intent to distribute and distribute marijuana and to maintain drug-involved premises, at trial it did not proceed with the cocaine conspiracy and the Court did not instruct the jury on the cocaine conspiracy.

Defendant also asserts that the government did not show evidence of interdependence because it did not show that each alleged co-conspirator depended on the operation of each co-conspirator.[9] To establish interdependence, defendant's actions must facilitate the endeavors of other alleged co-conspirators or facilitate the venture as a whole.  United States v. Horn, 946 F.2d 738, 743 (10th Cir. 1991).  Interdependence exists where each co-conspirator's actions constitute essential and integral steps toward the realization of a common illicit goal.  Pulido-Jacobo, 377 F.3d at 1131.

Here, the government presented ample evidence of interdependence among the co-conspirators.  Further, over the course of trial, several witnesses testified to defendant's role in the conspiracy.  The record contained sufficient evidence of defendant's involvement in the conspiracy to manufacture and to distribute high grade marijuana.

B.     Variance

Pickel contends that the government demonstrated multiple, independent conspiracies rather

---

[9]     Pickel correctly points to evidence that many of co-defendants did not know him. The law is clear, however, that defendant need not know all of the members of a conspiracy, see Caro, 965 F.2d at 1556, and that a particular defendant's participation in a conspiracy may be slight so long as the evidence establishes his connection to the conspiracy.  Id.

than the single conspiracy as alleged in the Superseding Indictment.  Defendant argues that this created a variance because evidence against other co-defendants subjected him to testimony about crimes in which he took no part and thus created "evidentiary spillover" which prejudiced the jury. See United States v. Dellosantos, 649 F.3d 109, 125 (1st Cir. 2011).

In determining whether a single conspiracy existed, the analysis focuses on whether the alleged co-conspirators exhibited interdependence.  Defendant asserts that the evidence failed to show a single conspiracy because the evidence did not show a connection between him and many other defendants.  As set forth above, however, the government produced ample evidence demonstrating interdependence.  Further, throughout this scheme, defendant demonstrated a substantial level of commitment to the conspiracy by engaging in a consistent series of smaller transactions that furthered the ultimate object of supplying marijuana in and around Lawrence, Kansas.  Accordingly, the evidence supports the jury conclusion that defendant was a member of the conspiracy charged in the indictment.  Thus, Pickel has not shown a variance.

Even assuming a variance between the indictment and the proof at trial, defendant is not entitled to relief unless the variance affected his substantial rights.  Defendant contends that evidence regarding activity of other defendants affected his substantial rights by creating a "spillover" effect. See United States v. Carnagie, 533 F.3d 1231, 1241-44 (10th Cir. 2008).  Here, the facts were not so intricate that the jury could not segregate the evidence as to each individual defendant.  Moreover, as noted, the Court instructed the jury that it should give separate and individual consideration to the evidence related to each defendant.  Finally, ample evidence established defendant's involvement in the conspiracy.  Therefore, if a variance occurred, it did not affect defendant's substantial rights.

IV.     **Pickel's Motion For New Trial**

        A.      Motion To Suppress

Pickel asserts that he is entitled to a new trial because the court erred in overruling his motion to suppress evidence seized by law enforcement officers when they arrested him near Lincoln, Nebraska on April 25, 2012, and again in San Lorenzo, California on June 13, 2013.  Defendant does not provide any new facts or argument regarding the Court's rulings.  The magistrate judge analyzed this issue at length in his <u>Report And Recommendation</u> on the motion to suppress, see Doc. #1250, which the Court adopted in its entirety, see <u>Order</u> (Doc, /#1336) filed April 15, 2014.  The Court stands by its previous reasoning and finds no basis for a new trial on this ground.

       B.      <u>Multiple Conspiracy Instruction</u>

Finally, Pickel asserts that the Court erred in refusing to give the jury a multiple conspiracy instruction.  For the reasons set out above, the Court finds no error.

**IT IS THEREFORE ORDERED** that Roosevelt Rico Dahda's <u>Motion For New Trial</u> (Doc. #1436) and Justin Cherif Pickel's <u>Motion For New Trial</u> (Doc. #1438), both filed August 6, 2014, which the Court construes as motions for acquittal and for a new trial, be and hereby are **OVERRULED**.

Dated this 21st day of November, 2014 at Kansas City, Kansas.

               <u>s/ Kathryn H. Vratil</u>
               Kathryn H. Vratil
               United States District Judge