**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.

**ROOSEVELT RICO DAHDA (02),**

    **Defendant.**

**Case No. 12-20083-02-DDC**

**MEMORANDUM AND ORDER**

On December 12, 2019, after remand from the Tenth Circuit, the court sentenced Roosevelt Dahda to 141 months in prison. This matter comes before the court on pro se[1] defendant Roosevelt Dahda's Motion For Immediate Release Pending Appeal (Doc. 2763). The government has not filed a response. On April 20 and April 24, 2020, Mr. Dahda filed supplemental exhibits in support of his motion. Docs. 2786 and 2789. For reasons explained below, the court denies Mr. Dahda's motion for release pending appeal.

**I.**     **Background**

On July 23, 2014, a jury found Mr. Dahda guilty on multiple counts of the Second Superseding Indictment (Doc. 462) including conspiracy to possess marijuana with intent to distribute it and to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 (Count 1), five counts of using of a communication facility to facilitate a drug trafficking offense, in violation of 21 U.S.C. § 843(b) (Counts 42, 45, 53, 55 and 70), two counts of

---

[1]     Because Mr. Dahda proceeds pro se, the court construes his filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court does not assume the role of advocate for a pro se litigant. *Id.*

possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D) (Counts 43 and 49), possession with intent to distribute and distribution of marijuana within 1,000 feet of a playground, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D), and 860 (Count 56), and attempted possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D) (Count 73). As it applied to the agreement to possess marijuana with intent to distribute it and to distribute marijuana, the jury found that "the overall scope of the agreement involved more than 1,000 kilograms of marijuana." Instructions To The Jury (Doc. 1430) filed July 23, 2014, No. 19.

At the original sentencing hearing, the court attributed a total of 725.7 kilograms of marijuana to Mr. Dahda. Presentence Investigation Report (Doc. 2043) filed September 22, 2015, ¶ 157. Because Mr. Dahda's offense involved at least 700 kilograms but less than 1,000 kilograms of marijuana, his base offense level was 28. U.S.S.G. § 2D1.1(c)(6); *see* Presentence Investigation Report (Doc. 2043), ¶ 162. The court added three levels because Mr. Dahda acted as a manager or supervisor (but not an organizer or leader) of criminal activity involving five or more participants, U.S.S.G. § 3B1.1(b). Mr. Dahda's total offense level was 31, with a criminal history category III, producing a guideline range of 135 to 168 months. *See* Presentence Investigation Report (Doc. 2043), ¶ 213. Based on Mr. Dahda's conviction on Count 1 and the government's notice of his prior felony drug convictions, he faced a statutory range of 20 years to life in prison. 21 U.S.C. §§ 841(b)(1)(A), 851. At sentencing, and in response to Mr. Dahda's objection to the statutory range, the government agreed to waive the statutory minimum under Section 841(b)(1)(A) and requested that the court sentence Mr. Dahda under Section 841(b)(1)(C). Because defendant had a prior conviction, his statutory range on

Count 1 included no minimum and a maximum of 30 years in prison. *See* 21 U.S.C. § 841(b)(1)(C).

On September 29, 2015, Judge Kathryn H. Vratil sentenced Mr. Dahda to 201 months in prison and 10 years of supervised release.[2] The sentence included an upward variance of 33 months above the upper end of the guideline range because Mr. Dahda had pressured a co-defendant to dissuade her from cooperating with the government. On April 4, 2017, the Tenth Circuit affirmed Mr. Dahda's convictions, but remanded for resentencing based on the calculation of the amount of marijuana attributable to him. *United States v. Roosevelt Dahda*, 852 F.3d 1282, 1298 (10th Cir. 2017), *aff'd*, 138 S. Ct. 1491 (2018).

At the hearing for resentencing, the court attributed a total of 486 kilograms of marijuana to Mr. Dahda—a reduction of some 240 kilograms. Transcript of Resentencing Hearing (Doc. 2738) at 16. Because Mr. Dahda's offense involved at least 400 kilograms but less than 700 kilograms of marijuana, his base offense level was 26. U.S.S.G. § 2D1.1(c)(7). The court again added three levels for his managerial role in the offense, U.S.S.G. § 3B1.1(a). Mr. Dahda's total offense level was 29, with a criminal history category III, which resulted in a guideline range of 108 to 135 months. *See* Revised Presentence Investigation Report (Doc. 2689), ¶ 217. Based on Mr. Dahda's convictions on Count 1 and the government's earlier agreement to waive the statutory minimum under Section 841(b)(1)(A), he faced a statutory range of zero to 30 years in prison. *See* 21 U.S.C. § 841(b)(1)(C).

---

[2]    Based on Mr. Dahda's violation of the terms of his supervised release in another case, Judge Vratil sentenced him to 30 months, with the sentence in that case to run consecutively to the sentence imposed in this case. *See* Judgment In A Criminal Case (Doc. 93) at 3 filed October 6, 2015 in D. Kan. No. 04-20060-01-KHV. Mr. Dahda did not appeal his revocation sentence.

On December 12, 2019, Judge Vratil resentenced Mr. Dahda to a controlling term of 141 months in prison and six years of supervised release. On December 21, 2019, Mr. Dahda appealed. *See* Notice Of Appeal (Doc. 2718).

Mr. Dahda now seeks immediate release pending resolution of his appeal.

## II.     Analysis

Initially, the court denies Mr. Dahda's pro se motion because he is represented by counsel who did not sign the document. *See United States v. Dunbar*, 718 F.3d 1268, 1278 (10th Cir. 2013) ("[T]he trial judge has no duty to consider pro se motions by a represented defendant."); *United States v. Sandoval-DeLao*, 283 F. App'x 621, 625 (10th Cir. 2008) (no error in refusal to consider pro se motion when defendant represented by counsel). In addition, for the reasons described below, Mr. Dahda has not satisfied the requirements for release on appeal.

Mr. Dahda asks the court to release him pending appeal under either Section 3143(b) or Section 3145(c) of Title 18 of the United States Code. *See* Motion For Immediate Release (Doc. 2763) at 2, 5–6. Because a jury found Mr. Dahda guilty of violations under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, he must satisfy the requirements of both Section 3143(b) and Section 3145(c). *See* 18 U.S.C. § 3145(b)(2) (detention mandatory if person found guilty of offense in Section 3142(f) which includes offenses with a maximum term of imprisonment of 10 years or more under the Controlled Substances Act); 18 U.S.C. § 3145(c) (person otherwise subject to mandatory detention under Section 3143(b)(2) may be ordered released for exceptional reasons). Accordingly, the court may release Mr. Dahda on appeal only if he shows: (1) by clear and convincing evidence, he is "not likely to flee or pose a danger to the safety of any other person or the community if released;" 18 U.S.C. § 3143(b)(1)(A); (2) his appeal "raises a substantial question of law or fact likely" to produce a reversal, a new trial, a

sentence with no custody component, or a custody sentence shorter than the anticipated life of the appeal, 18 U.S.C. § 3143(b)(1)(B); and (3) "exceptional reasons" demonstrate that his detention would not be appropriate, 18 U.S.C. § 3145(c).  Mr. Dahda has not satisfied any of these three requirements for release.

### A.  Whether Mr. Dahda Is Likely To Flee Or Pose A Danger To Community

To warrant release on appeal, Mr. Dahda must first demonstrate by clear and convincing evidence that, if released, he "is not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(b)(1)(A).  When determining whether a defendant is a risk of flight or poses a danger to the safety of another person and the community, the court considers (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against defendant; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  18 U.S.C. § 3142(g).

Mr. Dahda has presented some persuasive evidence on this issue, including the affidavit of a close family friend who has agreed to let Mr. Dahda and his brother reside at her residence. *See* Affidavit of Lynangela Jaimez (Doc. 2763-1).  Mr. Dahda also asserts that he has never failed to make a court appearance or had his bond revoked.  Motion For Immediate Release (Doc. 2763) at 8.  He also notes that in Kansas, penalties for possession of marijuana have been significantly reduced since his convictions in this case.  *See id.* at 9–10.  On the other hand, after Mr. Dahda waived a detention hearing, the magistrate judge determined that (1) probable cause existed that he had committed a drug-related offense with a maximum term of imprisonment of 10 years or more and (2) he had not rebutted the presumption that no condition or combination of conditions will reasonably assure his appearance as required or the safety of the community.  *See*

Order Of Detention Pending Trial (Doc. 13).  Moreover, a jury found Mr. Dahda guilty on numerous charges involving a widespread drug-trafficking conspiracy.  Significantly, during the beginning of the charged conspiracy, Mr. Dahda was on supervised release as part of a sentence that this court had imposed in a case where he pleaded guilty to providing false information to acquire a firearm, in violation of 18 U.S.C. § 922(a)(6), possession of a firearm while under felony indictment, in violation of 18 U.S.C. § 922(g), possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D), possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and possession of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  *See* Judgment In A Criminal Case (Doc. 75) filed March 7, 2005 in D. Kan. No. 04-20060-01-KHV.

      On balance, the court finds that Mr. Dahda has demonstrated that he is not a flight risk.  In contrast, the court finds that on the present record, Mr. Dahda has not shown by clear and convincing evidence that, if released, he "is not likely to pose a danger to the safety of any other person or the community."  18 U.S.C. § 3143(b)(1)(A).  Mr. Dahda's history of faithfully appearing for court proceedings and the change in penalties under Kansas law for possessing a small amount of marijuana does not reduce the court's concern that Mr. Dahda, if released, poses a serious risk to the safety of the community.  In particular, Mr. Dahda's prior criminal history raises significant concerns beyond those associated with possessing a user quantity of marijuana.  In 2004, Mr. Dahda pleaded guilty to firearm charges and possession with intent to distribute both marijuana and cocaine.  Mr. Dahda served 30 months in prison on the prior case, but almost immediately after his release, he and his brother Los coordinated a large-scale drug trafficking conspiracy.  Mr. Dahda remains a threat to the safety of the community from the risk that he will continue to engage in large-scale drug trafficking, potentially coupled with possession of

firearms as evidenced by his earlier convictions in the 2004 case.  For this reason, Mr. Dahda is not entitled to release on appeal.

But, even if Mr. Dahda could show that he does not pose a serious risk to the safety of the community, he has not satisfied two additional requirements to earn release.  The court discusses them, below.

### B.  Whether Mr. Dahda Has Shown A Substantial Question on Appeal

To warrant release on appeal, Mr. Dahda also must establish that his appeal "raises a substantial question of law or fact likely" to produce a reversal, a new trial, a sentence with no custody component, or a custody sentence shorter than the anticipated life of the appeal.  18 U.S.C. § 3143(b)(1)(B).  A "substantial question" is a "close question or one that very well could be decided the other way."  *United States v. Affleck*, 765 F.2d 944, 952 (10th Cir. 1985) (citation and quotation marks omitted).

Mr. Dahda argues that his appeal presents a substantial question whether the court erred in altering the prescribed statutory range under subsection 841(b)(1)(D) "despite the jury's failure to find his individual reasonabl[y] foreseeable drug attribution."  Motion For Immediate Release (Doc. 2763) at 5.  Mr. Dahda argues that a jury finding on drug quantity is necessary to go beyond the default statutory range in subsection 841(b)(1)(D).  While Mr. Dahda cites substantial authority in support of his position, he ignores the fact that the Tenth Circuit rejected a substantially similar argument in the appeal of his original sentence.  *Roosevelt Dahda*, 852 F.3d at 1292 (applying reasoning from companion *Los Dahda* decision: "Roosevelt's sentence under 21 U.S.C. § 841(b)(1)(C) did not constitute error, much less plain error" based on jury finding that conspiracy involved 1,000 kilograms or more of marijuana); *see also Los Dahda*, 853 F.3d at 1116–17 (rejecting challenge that his "sentence [beyond the 5-year statutory

7

maximum in Section 841(b)(1)(D)] violates the Constitution because the jury did not specifically find the marijuana quantity involved in the conspiracy"). As the Tenth Circuit explained, the district court did not err by applying the statutory range under Section 841(b)(1)(C) because "the quantity of 1,000 kilograms constituted an element of the charged conspiracy." *Roosevelt Dahda*, 852 F.3d at 1292 (citing *Los Dahda*, 853 F.3d at 1116–17). Both the law of the case doctrine and the mandate rule are substantial obstacles to Mr. Dahda's challenge that the court could not impose a sentence beyond the statutory maximum under Section 841(b)(1)(D). *See* Judge Vratil's Sentencing Memorandum (Doc. 2710) filed December 16, 2019 at 4–6.

In addition to these obstacles, Mr. Dahda has not sufficiently explained why the statutory limits of Section 841(b)(1)(D) would have produced a different sentence. Even if a five-year statutory maximum applied to Count 1, the sentencing court arguably could have stacked the sentences on the various counts to reach a guideline range that exceeded the statutory maximum on a single count of conviction. *See* U.S.S.G. § 5G1.2(d), App. Note 1 to U.S.S.G. § 5G1.2(d), and 18 U.S.C. § 3584.

Mr. Dahda also argues that his appeal presents a substantial question whether the sentencing court failed to determine his relevant conduct properly in light of Amendment 790 to the United States Sentencing Guidelines. This amendment clarified the "jointly undertaken criminal activity" analysis for relevant conduct purposes. *See* Motion For Immediate Release (Doc. 2763) at 3, 6. Under the 2014 version of the Guidelines, which the court applied at Mr. Dahda's original sentencing in 2015, Section 1B1.3 defined relevant conduct "in the case of a jointly undertaken criminal activity" to include "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B) (2014). The Commentary to the 2014 version of the Guidelines provided:

> Because a count may be worded broadly and include the conduct of many participants over a period of time, the scope of the criminal activity jointly undertaken by the defendant (the "jointly undertaken criminal activity") is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant.  In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement).

Application Note 2 to U.S.S.G. § 1B1.3 (2014).

Amendment 790 amended Section 1B1.3(a)(1)(B).  It now defines relevant conduct "in the case of a jointly undertaken criminal activity" to include "all acts and omissions of others that were—(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B) (2018).  Amendment 790 "restructure[d] the guideline and its commentary to set out more clearly the three-step analysis the court applies in determining whether a defendant is accountable for the conduct of others in a jointly undertaken criminal activity under § 1B1.3(a)(1)(B)." U.S.S.G. Supp. to App. C, Amend. 790, Reason for Amendment.  While the prior version of the Guidelines included the scope requirement in the commentary, the amended Guideline more prominently and clearly specifies that the scope of each defendant's jointly undertaken criminal activity depends on "the scope of the specific conduct and objectives embraced by the defendant's agreement."  *United States v. Barona-Bravo*, 685 F. App'x 761, 781 (11th Cir. 2017) (citing Commentary).

At resentencing, Judge Vratil specifically recognized Amendment 790, but found that it did not make any difference when calculating the amount of marijuana attributable to Mr. Dahda. *See* Transcript Of Resentencing Hearing (Doc. 2737) at 11 ("I read [Amendment 790] to more clearly articulate the three-step process that the court applies in determining whether the

9

defendant is accountable for the conduct of others in the jointly-undertaken criminal activity. But on the facts of this case, I don't see that it leads us to a different outcome."). In Mr. Dahda's original appeal, the Tenth Circuit concluded that the court "did not clearly err in finding that the marijuana shipments had been reasonably foreseeable and within the scope of the criminal activity undertaken by Roosevelt." *Roosevelt Dahda*, 852 F.3d at 1293. While Mr. Dahda did not challenge, and the Tenth Circuit did not directly address whether the acts of others were "in furtherance of th[e jointly undertaken] criminal activity," this finding seems implicit in Judge Vratil's findings at both sentencing hearings. Accordingly, the court predicts it is unlikely that Mr. Dahda will prevail on his argument that Amendment 790, which emphasized the importance of the scope of the jointly undertaken activity, compels a reduced sentence. It appears to the court that even if Mr. Dahda prevails on appeal, the Tenth Circuit would likely find that any error was harmless or remand for another sentencing hearing.

In sum, Mr. Dahda has has not shown that a favorable outcome on either of his issues would alter the relevant guideline range or otherwise confine the sentencing court's authority.

### C.  Whether Mr. Dahda Has Shown Exceptional Reasons For Release

To warrant release on appeal, Mr. Dahda must also establish that "exceptional reasons" exist why his detention would not be appropriate. 18 U.S.C. § 3145(c). "Exceptional" means clearly out of the ordinary, uncommon or rare. *United States v. Mutte*, 383 F. App'x 716, 718 (10th Cir. 2010); *see United States v. Velarde*, 555 F. App'x 840, 841 (10th Cir. 2014) ("The statutory reference to *exceptional* reasons has real substance; circumstances that do not extend beyond the ordinary provide no basis for release under § 3145(c)."). A wide range of factors may bear upon the analysis. *Mutte*, 383 F. App'x at 718.

Mr. Dahda suggests that substantial questions presented by his appeal constitute exceptional circumstances. For substantially the same reasons described above, the court concludes that Mr. Dahda has not shown a likelihood that he will prevail on appeal or, if he does so, that his victory would lead to a term in prison shorter than what he already has served.

More than one month after Mr. Dahda filed his motion, he submitted several supplemental exhibits about BOP memoranda and its response to the COVID-19 pandemic. Docs. 2786, 2789. None of the exhibits address Mr. Dahda's situation, specifically. The court liberally construes Mr. Dahda's exhibits as an argument that the COVID-19 pandemic constitutes an exceptional circumstance that compels his release.[3]

Mr. Dahda currently is confined at FCI Lompoc in Lompoc, California. As of May 4, 2020, 51 inmates and 10 staff members at this facility have tested positive for COVID-19. *See* BOP, COVID-19 Cases, accessed May 5, 2020, https://www.bop.gov/coronavirus/. Mr. Dahda does not provide any information about his risk of severe illness should he contract COVID-19. Based on the present record, the court finds that the COVID-19 pandemic by itself is insufficient to establish exceptional circumstances to release Mr. Dahda pending appeal.

---

[3] The court declines to construe Mr. Dahda's argument as a request for relief under the Coronavirus Aid, Relief and Economic Security Act ("CARES Act"), Pub. L. No. 116-136 (enacted March 27, 2020) or under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A). In any event, based on the present record, the court lacks jurisdiction to grant relief under either provision. First, the CARES Act authorizes the BOP—not courts—to approve home confinement for a remaining term of imprisonment. *United States v. Nash*, No. 19-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020); *see United States v. Read-Forbes*, No. 12-20099-01-KHV, 2020 WL 1888856, at *5 (D. Kan. Apr. 16, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision."). Under the compassionate release statute, the court lacks jurisdiction to grant relief until a defendant has "fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion" on his behalf or 30 days have elapsed since he submitted a request for a motion to the warden. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (defendant's failure to exhaust administrative remedies "present[ed] a glaring roadblock foreclosing compassionate release" under § 3582(c)(1)(A)).

Mr. Dahda may choose to pursue a request for relief under the CARES Act or the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A). Under either statute, the BOP can assess the relevant factors and determine whether release is appropriate. *See United States v. Brown*, No. 12-20066-37-KHV, 2020 WL 1935053, at *2 (D. Kan. Apr. 22, 2020) ("BOP is in a better position to initially determine [defendant's] medical needs, his specific risk of COVID-19 and the risk to inmates generally at FCI Forrest City, the risk to the public if he is released and whether his release plan is adequate"). If the BOP declines to file a motion on Mr. Dahda's behalf under the compassionate release statute or 30 days have elapsed since he a made a request, he can file a motion for compassionate release.[4]

**IT IS THEREFORE ORDERED BY THE COURT THAT** Roosevelt Dahda's Motion For Immediate Release Pending Appeal (Doc. 2763) is denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** Roosevelt Dahda's Motion for Expedited Ruling (Doc. 2764) is granted.

---

[4] As an alternative to release, Mr. Dahda asks that the court recommend that the BOP designate him to a facility "as close to his appellate counsel as possible." Motion For Immediate Release (Doc. 2763) at 11. If a defendant is not released on appeal, the court may recommend to the Attorney General that a defendant be confined near the place of the appeal for "a period reasonably necessary to permit the defendant to assist in preparing the appeal." Fed. R. Crim. P. 38(b)(2).

At sentencing, Judge Vratil granted Mr. Dahda's request for a recommendation that the BOP designate him to a facility in Leavenworth, Kansas. *See* Judgment In A Criminal Case (Doc. 2714) at 3. Despite the recommendation, the BOP designated Mr. Dahda to a facility in Lompoc, California. Mr. Dahda's present request is untimely as he could have asked at sentencing for such a recommendation, rather than his request based on familial ties. In addition, because Mr. Dahda's deadline to file his appeal brief is May 27, 2020, some three weeks from now, a judicial recommendation to transfer him from Lompoc to Denver may impede, rather than assist, appellate counsel's ability to communicate with him. Because defendant filed the present motion pro se, the record does not reflect counsel's opinion whether a transfer recommendation would assist communication about the appeal. On the present record, the court therefore denies Mr. Dahda's pro se request.

**IT IS SO ORDERED.**

**Dated this 7th day of May, 2020, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**

13