**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| **Plaintiff,** | |
| | Case Nos. 04-20060-01-DDC |
| v. | 12-20083-02-DDC |
| **ROOSEVELT RICO DAHDA,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

On December 12, 2019, after remand from the Tenth Circuit, the court sentenced defendant Roosevelt Dahda to 141 months in prison. On April 30, 2021, the Tenth Circuit affirmed. This matter comes before the court on Mr. Dahda's pro se[1] Motion for a Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) & (c)(2) (Doc. 2992 in Case No. 12-20083-02 and Doc. 94 in Case No. 04-20060-01).[2] The government filed a Response (Doc. 3001), and Mr. Dahda filed a Reply (Doc. 3013) and supplemental exhibits (Doc. 2994, Doc. 3014, Doc. 3015). For reasons explained below, the court denies Mr. Dahda's motion to reduce sentence.

### I.     Background

On October 18, 2004, Mr. Dahda pleaded guilty to acquiring a firearm by making false or fictitious statements, possession of firearms while under indictment, possession with intent to distribute marijuana, possession with intent to distribute cocaine, and use and possession of

---

[1]     Because Mr. Dahda proceeds pro se, the court construes his filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court does not assume the role of advocate for a pro se litigant. *Id.*

[2]     Unless otherwise noted, all document numbers refer to the filings in case number 12-20083-02.

firearm in relation to and in furtherance of a drug trafficking crime.  Plea Agreement (Doc. 68 in
Case No. 04-20060-01) at 1.  The Presentence Investigation Report (PSR) calculated a base
offense level of 20 based on a converted quantity of 56.714 kilograms of marijuana.  PSR ¶ 44;
*see* U.S.S.G. § 2D1.1(c)(10) (Nov. 1, 2004 ed.).  After a two-level reduction for Mr. Dahda's
acceptance of responsibility, his total offense level was 18 with a criminal history category of I,
producing a guideline sentencing range of 27 to 33 months.  PSR ¶ 101.  In addition, Mr.
Dahda's conviction for use and possession of a firearm in relation to a drug trafficking crime
under 18 U.S.C. § 924(c) included a mandatory sentence of 60 months and was required to run
consecutive to the sentence on the other convictions.  PSR ¶ 102.  On March 1, 2005, the court
sentenced Mr. Dahda to 90 months in prison and three years of supervised release.  On
November 29, 2010, the Bureau of Prisons (BOP) released Mr. Dahda and he began his term of
supervised release.

On July 11, 2012, a grand jury charged Mr. Dahda and others with conspiracy to possess
with intent to distribute and to distribute five kilograms or more of a mixture and substance
containing cocaine; to possess with intent to distribute and to distribute 1,000 kilograms or more
of marijuana; and maintaining drug-involved premises, in violation of 21 U.S.C. § 841(a)(1),
(b)(1)(A)(ii) and (b)(1)(A)(vii); 21 U.S.C. §§ 846, 856 and 18 U.S.C. § 2.  The indictment also
charged Mr. Dahda with multiple other drug crimes.  On July 23, 2014, a jury found Mr. Dahda
guilty on multiple counts of the Second Superseding Indictment (Doc. 462) including conspiracy
to possess marijuana with intent to distribute it and to distribute marijuana, in violation of 21
U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 (Count 1), five counts of using a communication facility
to facilitate a drug trafficking offense, in violation of 21 U.S.C. § 843(b) (Counts 42, 45, 53, 55
and 70), two counts of possession of marijuana with intent to distribute, in violation of 21 U.S.C.

§ 841(a)(1), (b)(1)(D) (Counts 43 and 49), possession with intent to distribute and distribution of marijuana within 1,000 feet of a playground, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D), and 860 (Count 56), and attempted possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D) (Count 73).  As it applied to the conspiracy charge, the jury found that "the overall scope of the agreement involved more than 1,000 kilograms of marijuana."  Instructions To The Jury (Doc. 1430) filed July 23, 2014, No. 19.

At the original sentencing hearing, the court attributed a total of 725.7 kilograms of marijuana to Mr. Dahda.  PSR (Doc. 2043) filed September 22, 2015, ¶ 157.  Because Mr. Dahda's offense involved at least 700 kilograms but less than 1,000 kilograms of marijuana, his base offense level was 28.  U.S.S.G. § 2D1.1(c)(6); *see* PSR (Doc. 2043), ¶ 162.  The court added three levels because Mr. Dahda had acted as a manager or supervisor (but not an organizer or leader) of criminal activity involving five or more participants, U.S.S.G. § 3B1.1(b).  Mr. Dahda's total offense level was 31, with a criminal history category III, producing a guideline range of 135 to 168 months.  *See* PSR (Doc. 2043), ¶ 213.  Based on Mr. Dahda's conviction on Count 1 and the government's notice of his prior felony drug convictions, he faced a statutory range of 20 years to life in prison.  21 U.S.C. §§ 841(b)(1)(A), 851.  At sentencing, and in response to Mr. Dahda's objection to the statutory range, the government agreed to waive the statutory minimum under Section 841(b)(1)(A) and requested that the court sentence Mr. Dahda under Section 841(b)(1)(C).  Because defendant had a prior conviction, his statutory range on Count 1 included no minimum sentence and a maximum term of 30 years in prison.  *See* 21 U.S.C. § 841(b)(1)(C).

On September 29, 2015, Judge Kathryn H. Vratil of our court sentenced Mr. Dahda to 201 months in prison and 10 years of supervised release.[3]  The sentence included an upward variance of 33 months above the upper end of the guideline range because Mr. Dahda had pressured a co-defendant to dissuade her from cooperating with the government.  On April 4, 2017, the Tenth Circuit affirmed Mr. Dahda's convictions, but remanded for resentencing based on the calculation of the quantity of marijuana attributable to him.  *United States v. Roosevelt Dahda*, 852 F.3d 1282, 1298 (10th Cir. 2017), *aff'd*, 138 S. Ct. 1491 (2018).

At the resentencing hearing, the court attributed a total of 486 kilograms of marijuana to Mr. Dahda—a reduction of some 240 kilograms.  Transcript of Resentencing Hearing (Doc. 2738) at 16.  Because Mr. Dahda's offense involved at least 400 kilograms but less than 700 kilograms of marijuana, his base offense level was 26.  U.S.S.G. § 2D1.1(c)(7).  The court again added three levels for his managerial role in the offense, U.S.S.G. § 3B1.1(a).  Mr. Dahda's total offense level was 29, with a criminal history category III, which resulted in a guideline range of 108 to 135 months.  *See* Revised Presentence Investigation Report (Doc. 2689), ¶ 217.  Based on Mr. Dahda's convictions on Count 1 and the government's earlier agreement to waive the statutory minimum under Section 841(b)(1)(A), he faced a statutory range of zero to 30 years in prison.  *See* 21 U.S.C. § 841(b)(1)(C).

On December 12, 2019, Judge Vratil resentenced Mr. Dahda to a controlling term of 141 months in prison and six years of supervised release.  On December 21, 2019, Mr. Dahda

---

[3]      On September 29, 2015, based on Mr. Dahda's violation of the terms of his supervised release in the 2004 case, Judge Vratil sentenced him to 30 months, with the sentence in that case to run consecutively to the sentence imposed in the 2012 case.  *See* Judgment In A Criminal Case (Doc. 93 in Case No. 04-20060-01) at 3, filed October 6, 2015.  Mr. Dahda did not appeal his revocation or the sentence for it.

appealed.  *See* Notice Of Appeal (Doc. 2718).  On April 30, 2021, the Tenth Circuit affirmed. *United States v. Roosevelt Dahda*, 854 F. App'x 267 (10th Cir. 2021).

Mr. Dahda currently is confined at FCI Sandstone in Sandstone, Minnesota.  As of August 12, 2022, one inmate and four staff members at this facility have tested positive for COVID-19 but not yet recovered.  *See* BOP, COVID-19 Cases, accessed August 12, 2022, https://www.bop.gov/coronavirus/.

The BOP aggregated Mr. Dahda's consecutive sentences of 141 months (2012 case) and 30 months (revocation in 2004 case).  *See* 18 U.S.C. § 3584(c) ("Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment.").  Therefore, Mr. Dahda seeks a reduced sentence in both cases.  With good time credit, Mr. Dahda's expected release date is August 18, 2024.

In Mr. Dahda's current motion, he seeks to have his revocation sentence in the 2004 case reduced to time served because Amendment 782 to the Sentencing Guidelines retroactively lowered his guideline range.  He also seeks compassionate release in both cases because (1) his medical conditions and the COVID-19 pandemic put him at risk of severe illness, (2) Amendment 782 lowered his sentencing guideline range in the 2004 case, (3) the government induced him to plead guilty in the 2004 case by threatening to pursue a second Section 924(c) charge which it asserted carried a consecutive 25-year statutory minimum sentence, (4) the two handguns identified in the Section 924(c) charge in the 2004 case were not capable of firing ammunition, and (5) the sentencing court in the 2012 case did not properly calculate his relevant conduct under Amendment 790 to the Sentencing Guidelines.

## II.     Discussion

"A district court is authorized to modify a [d]efendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so." *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) (quoting *United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996)).  After the court imposes a sentence, "the court has no authority to modify that sentence," except in "three, very limited circumstances" that are "set forth in 18 U.S.C. § 3582(c)." *United States v. Mannie*, 971 F.3d 1145, 1147–48 (10th Cir. 2020); *see United States v. Spaulding*, 802 F.3d 1110, 1124 (10th Cir. 2015) ("[Section] 3582(c) acts as a jurisdictional limitation on the ability of district courts to alter previously imposed sentences of imprisonment.").  Here, Mr. Dahda seeks a reduced sentence based on:  (1) a guideline range that the Sentencing Commission has subsequently lowered, 18 U.S.C. § 3582(c)(2), and (2) "extraordinary and compelling reasons," 18 U.S.C. § 3582(c)(1)(A).  The court addresses each argument in turn, below.

### A.  Motion to Reduce Sentence Under 18 U.S.C. § 3582(c)(2).

Section 3582(c)(2) permits a district court to reduce a defendant's term of imprisonment if the term of imprisonment was "based on a sentencing range that has subsequently been lowered by the Sentencing Commission [under] 28 U.S.C. 994(o)." 18 U.S.C. § 3582(c).  To secure relief under Section 3582(c)(2), a defendant must overcome three distinct hurdles: (1) under the statute's "based on" clause, "defendant must show he was sentenced based on a guideline range the Sentencing Commission lowered subsequent to defendant's sentencing;" (2) under the statute's "consistent with" clause, "defendant must establish his request for a sentence reduction is consistent with the Commission's policy statements related to § 3582(c)(2);" and (3) "defendant must convince the district court he is entitled to relief in light

of the applicable sentencing factors found in 18 U.S.C. § 3553(a)." *United States v. C.D.*, 848 F.3d 1286, 1289–90 (10th Cir. 2017). The first hurdle is a jurisdictional one. *Id*. at 1289.

Mr. Dahda asks the court to reduce his revocation sentence under 18 U.S.C. § 3582(c)(2) because Amendment 782 to the United States Sentencing Guidelines (U.S.S.G.) reduced the guideline range for his original sentencing from the 2004 case. The government has not directly responded to Mr. Dahda's request for relief under Section 3582(c)(2). But its silence on this subject doesn't entitle Mr. Dahda to relief.

Mr. Dahda's argument fails to distinguish between the two terms of imprisonment imposed in the 2004 case: (1) a sentence of 90 months imposed in 2005, which Mr. Dahda already has served and (2) a revocation sentence of 30 months imposed in 2015, which Mr. Dahda is currently serving (along with the consecutive sentence of 141 months in Case No. 12-20083-02). Mr. Dahda now asks the court to modify "his term of imprisonment [in the 2004 case], reducing his supervised release violation to reflect [Amendment 782] or amend his judgment to reflect that his supervised release violation as time served fully." Motion (Doc. 2992) at 17–18.

Effective November 1, 2015, Amendment 782 reduced the base offense levels by two levels for the various drug quantities set forth in Section 2B1.1 of the Guidelines. U.S.S.G. supp. to app. C, Amend. 782 & 788. Because Amendment 782 applies retroactively, the court is authorized "to reduce the sentences of prisoners who were sentenced based on a Guidelines range that would have been lower had the amendment been in place when they were sentenced." *Hughes v. United States*, 138 S. Ct. 1765, 1773 (2018). In Mr. Dahda's 2004 case, based on a converted drug quantity of 56.714 kilograms of marijuana, his base offense level originally was 20, with a total offense level of 18 and a guideline range of 27 to 33 months. PSR ¶ 44; *see*

7

U.S.S.G. § 2D1.1(c)(10) (2004). After Amendment 782, Mr. Dahda's base offense level would be 18, which would lower his total offense level to 16 and produce a new guideline range of 21 to 27 months. *See* U.S.S.G. § 2D1.1(c)(11) (2021). Mr. Dahda's consecutive sentence of 60 months in prison on the Section 924(c)(2) offense would remain, unchanged.

When Amendment 782 became effective on November 1, 2015, Mr. Dahda already had started serving his revocation term of imprisonment of 30 months, which the court imposed on September 29, 2015. Amendment 782 had no effect on the advisory policy statements in Chapter 7 of the Guidelines which the court applied to determine Mr. Dahda's revocation sentence. Simply put, the court lacks authority to modify Mr. Dahda's revocation "term of imprisonment" based on a retroactive amendment that lowered the sentencing range for his original "term of imprisonment" imposed by the court in 2005. By its express terms, Section 3582(c)(2) provides only for the "modif[ication of] a term of imprisonment." *Dillon v. United States*, 560 U.S. 817, 825 (2010) (quoting 18 U.S.C. § 3582(c)(2)). Once a defendant serves his original "term of imprisonment," the court no longer has authority to modify that portion of his sentence. *See United States v. Wilson*, 799 F. App'x 792, 794 (11th Cir. 2020) ("Our authority to grant § 3582(c)(2) relief to [defendant] vanished once he served his entire term of imprisonment, regardless of whether he is on supervised release as a result of his conviction."); *see also United States v. Martin*, 974 F.3d 124, 144 (2d Cir. 2020) ("If Congress intended to permit the retroactive modification of a sentence that has already been served, it could have done so."); U.S.S.G. § 1B1.10(b)(2)(C) ("In no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served.").[4] Mr. Dahda is no longer in custody on a sentence that was "based on a guideline range the Sentencing

---

[4]    The policy statement to which § 3582(c)(2) refers is the current version of § 1B1.10 of the Guidelines. *See* U.S.S.G. § 1B1.10.

Commission lowered subsequent to defendant's sentencing." *C.D.*, 848 F.3d at 1288.  The court thus lacks jurisdiction to grant Mr. Dahda relief under 18 U.S.C. § 3582(c)(2).  *Id*. at 1289.

A retroactive sentencing amendment such as Amendment 782 "has no bearing on [Mr. Dahda's] current term of incarceration" because "that sentence is based on [his] noncompliance with the terms of his supervised release, not on the drug quantity table set forth in U.S.S.G. § 2D1.1(c)."  *United States v. Williams*, 367 F. App'x 967, 968 (10th Cir. 2010) (quoting *United States v. Fontenot*, 583 F.3d 743, 744 (10th Cir. 2009)).  Indeed, the Commentary to Section 1B1.10 explicitly explains that it "does not authorize a reduction in the term of imprisonment imposed upon revocation of supervised release."  U.S.S.G. § 1B1.10, cmt. n.7(A); *see id.* ("Only a term of imprisonment imposed as part of the original sentence is authorized to be reduced under this section.").  So, even if the court had jurisdiction to consider Mr. Dahda's request for a reduced sentence on his revocation term of imprisonment, the court would deny his request because it is not consistent with the Sentencing Commission's relevant policy statement.[5] *See Williams*, 367 F. App'x at 968.

---

[5]    The court is permitted—in some instances—to consider how a retroactive sentencing amendment would have affected a defendant's original sentence, even if he is no longer in custody on that sentence.  For example, a defendant out of custody but still on supervised release could seek early termination of supervised release under 18 U.S.C. § 3583(e)(1) based in part on a retroactive sentencing amendment that would have applied to his original term of imprisonment but for the fact that he is no longer in custody.  18 U.S.C. § 3583(e)(1) (after considering various factors under Section 3553(a), the court may "terminate a term of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice"); *see United States v. Wilson*, 799 F. App'x 792, 793 (11th Cir. 2020) (in deciding a § 3583(e)(1) motion, "a district court could consider whether [defendant]'s term of imprisonment would have been reduced under § 3582(c)(2) if he had not already served his entire term of imprisonment"); *United States v. Bey*, No. 94-20075-01-KHV, 2011 WL 6257752, at *3 (D. Kan. Dec. 15, 2011) ("If a defendant has 'over-served' his prison term in a case of a retroactive amendment which lowers a sentencing range, the Court may consider that factor in connection with any motion for early termination of a term of supervised release under Section 3583(e)(1).") (citing U.S.S.G. § 1B1.10(b)(2)(C), cmt. n.7(B)).  A defendant also could raise the issue as a mitigating factor at sentencing for revocation of supervised release.  But Mr. Dahda did not make this argument at the revocation sentencing in 2015.  Finally, a defendant—like Mr. Dahda has done here—can assert the fact that Amendment 782 lowered the sentencing range that applied to the original term of imprisonment constitutes an extraordinary and compelling reason for release.  The court addresses Mr. Dahda's argument on this point, below.

In sum, Mr. Dahda is not entitled to relief under 18 U.S.C. § 3582(c)(2) and
Amendment 782.

### B.  Motion to Reduce Sentence Under 18 U.S.C. § 3582(c)(1)(A).

Title 18 U.S.C. § 3582(c)(1)(A)—commonly called the compassionate release statute—
permits a court to modify a term of imprisonment "upon motion of the defendant after the
defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a
motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the
warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A); *see also*
*United States v. Maumau*, 993 F.3d 821, 830–31 (10th Cir. 2021) (reviewing § 3582(c)(1)'s
history, text, and requirements).  Our Circuit has held the exhaustion requirement is a claim-
processing rule that the government may waive or forfeit.  *United States v. Hemmelgarn*, 15
F.4th 1027, 1030–31 (10th Cir. 2021).

Apart from this exhaustion requirement, the court applies a three-step analysis to evaluate
the substance of compassionate release motions filed under § 3582(c)(1)(A).  *United States v.*
*McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021).  The court may grant a motion for reduction of
sentence only if "(1) the district court finds that extraordinary and compelling reasons warrant
such a reduction; (2) the district court finds that such a reduction is consistent with applicable
policy statements issued by the Sentencing Commission; and (3) the district court considers the
factors set forth in [18 U.S.C.] § 3553(a), to the extent that they are applicable."  *Id.*  Relief may
"be granted only if all three prerequisites are satisfied," and, accordingly, "the three steps [can]
be considered in any order."  *United States v. Hald*, 8 F.4th 932, 942 (10th Cir. 2021).

The Tenth Circuit has held that it does not view the first step in § 3582(c)(1)(A)—
"extraordinary and compelling" reasons—as jurisdictional.  *Id.* at 942 n. 7 (declining "to read a

jurisdictional element into § 3582(c)(1)(A)'s 'extraordinary and compelling reasons' requirement when the statute itself provides no indication (much less a 'clear statement') to that effect."). The court need not consider the second step of the analysis because the Sentencing Commission has not issued an "applicable policy statement" for defendant-filed compassionate release motions like this one. *Maumau*, 993 F.3d at 837–38. So, "[u]nless and until the Sentencing Commission issues such a policy statement, the second requirement does not apply." *United States v. Quinn*, No. 10-20129-03-KHV, 2021 WL 3129600, at *2 (D. Kan. July 23, 2021).

## 1. Exhaustion of Administrative Remedies

Mr. Dahda submitted at least four requests for compassionate release to his warden, including one on March 28, 2022. The government argues that because Mr. Dahda's administrative requests were limited to his medical condition and the COVID-19 pandemic, he has not exhausted administrative remedies for any other grounds for relief. The Tenth Circuit has not issued a published opinion addressing whether 18 U.S.C. § 3582(c)(1)(A) requires movants to exhaust each argument they raise to support their motions for compassionate release. In an unpublished opinion, however, the Tenth Circuit held that inmates must exhaust administrative remedies for each issue they later take to court. *United States v. Gieswein*, 832 F. App'x 576, 577–78 (10th Cir. 2021) (because defendant's "request to the warden did not include COVID-19 as a reason for compassionate release," the district court properly dismissed his COVID-19 argument for failure to exhaust administrative remedies). Several other circuits—including one in a published decision—adopted a similar rule. *See United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021) (per curiam) ("an inmate is required to present the same or similar ground for compassionate release in a request to the Bureau as in a motion to the court;" "any contrary approach would undermine the purpose of exhaustion"); *United States v. Rice*, 848

11

F. App'x 320, 321 (9th Cir. 2021) (district court must dismiss motion without prejudice because inmate's request to unit manager did not mention COVID-19 or any medical conditions as extraordinary and compelling circumstances).

To decide this case's motion, the court need not resolve the question whether an inmate must exhaust administrative remedies for every issue raised in a motion for compassionate release motion.  The government concedes that Mr. Dahda exhausted his argument for compassionate release based on his health condition and the COVID-19 pandemic.  Turning to Mr. Dahda's other asserted grounds for relief, requiring him to exhaust those grounds would prove futile, it appears.  Specifically, in contrast to the court, "the BOP is restricted to granting relief consistent with the definition of extraordinary and compelling reasons in the Sentencing Commission's policy statement."  *United States v. Tyler*, No. 04-20044-02-KHV, 2022 WL 2866700, at *2 (D. Kan. July 29, 2022) (citing U.S.S.G. § 1B1.13, cmt. n.1 (2018)).  The BOP is not authorized to grant compassionate release based on (1) the effect of Amendment 782 on a defendant's sentencing guideline range, (2) the government's threat to pursue a second Section 924(c) charge to secure a guilty plea, (3) the capability of the relevant handguns to fire ammunition, and (4) the sentencing court's relevant conduct findings.  Section 1B1.13 does not identify any of these reasons as "extraordinary and compelling" grounds for relief.  *See Tyler*, 2022 WL 2866700, at *2; *see also United States v. Matthews*, No. 20-14597, 2022 WL 807150, at *3 (11th Cir. Mar. 17, 2022) (sentencing disparity is not "extraordinary and compelling" grounds for relief under § 1B1.13).  Because exhaustion of these reasons would prove futile, Mr. Dahda was not required to raise these grounds in his administrative requests for relief.  *See Tyler*, 2022 WL 2866700, at *2; *see also Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010) (narrow exception to exhaustion requirement if petitioner can demonstrate exhaustion is futile); *United*

*States v. Davis*, No. 4:08CR144, 2022 WL 220872, at *2 (E.D. Va. Jan. 25, 2022) (waiver of

exhaustion requirement appropriate because any attempt by defendant to raise before BOP

arguments about consecutive § 924(c) sentences, rehabilitation or need to reunite with family

would prove futile).

### 2.  Extraordinary and Compelling Reasons for Release

Mr. Dahda seeks compassionate release in both cases because (1) his medical conditions

and the COVID-19 pandemic put him at risk of severe illness, (2) Amendment 782 lowered his

sentencing guideline range in the 2004 case, (3) the government induced him to plead guilty in

the 2004 case by threatening to pursue a second Section 924(c) charge which it asserted carried a

consecutive 25-year statutory minimum sentence, (4) the two handguns in the 2004 case were

not capable of firing ammunition, and (5) the sentencing court in the 2012 case did not properly

calculate his relevant conduct under Amendment 790 to the Sentencing Guidelines.

Initially, the government argues that the court cannot address Mr. Dahda's arguments

"related to the validity of his sentence" in either case (presumably grounds two through five)

which he should have raised—or did raise—under 28 U.S.C. § 2255.  Government's Response to

Defendant's Motion for Compassionate Release (Doc. 3001) at 24–25.  Based on the statutory

text of Section 2255, the Tenth Circuit long has held that "[t]he exclusive remedy for testing the

validity of a judgment and sentence, unless it is inadequate or ineffective, is that provided for in

28 U.S.C. § 2255."  *Johnson v. Taylor*, 347 F.2d 365, 366 (10th Cir. 1965); *see* 28 U.S.C.

§ 2255(e) ("An application for a writ of habeas corpus [o]n behalf of a prisoner who is

authorized to apply for relief by motion pursuant to this section, shall not be entertained if it

appears that the applicant has failed to apply for relief, by motion, to the court which sentenced

him, or that such court has denied him relief, unless it also appears that the remedy by motion is

inadequate or ineffective to test the legality of his detention.").  In several unpublished decisions, including a recent one, our Circuit has extended this principle to preclude a district court—when determining whether a defendant has presented extraordinary and compelling reasons for a reduced sentence under the compassionate release statute—from considering *arguments* that go to the validity of a defendant's conviction or sentence.[6]  While the court has some reservations about these unpublished decisions in light of § 3582(c)'s text and the Circuit's published decisions in *Maumau* and *McGee*,[7] the court need not resolve the issue here.  For even if

---

[6]      *See United States v. Gieswein*, No. 22-6014, 2022 WL 2841835, at *3 (10th Cir. July 21, 2022) (compassionate release motion which primarily challenged legality of defendant's sentence is "patently without merit" because "§ 3582(c)(1)(A) is not a substitute for 28 U.S.C. § 2255 as '[t]he exclusive remedy for testing the validity of a judgment and sentence, unless it is inadequate or ineffective, is that provided for in 28 U.S.C. § 2255.'") (quoting *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996)); *United States v. Mata-Soto*, 861 F. App'x 251, 255 (10th Cir. 2021) (gross disparity between life sentence under § 841(b)(1)(A) and more lenient 20-year maximum term defendant says he should have received under § 841(b)(1)(C) cannot be considered on motion for compassionate release since "proper vehicle to raise that argument was a motion to vacate his conviction and sentence under 28 U.S.C. § 2255, not a compassionate-release motion under § 3582(c)(1)(A)"); *United States v. Read-Forbes*, 843 F. App'x 131, 134 n.2 (10th Cir. 2021) (federal habeas corpus proceedings are the exclusive remedy for a prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution") (quoting 28 U.S.C. § 2255(a)); *United States v. Sears*, 836 F. App'x 697, 699–700 (10th Cir. 2020) (legal error in a defendant's sentence or post-sentencing developments in the case law cannot be considered on motion for compassionate release because "regardless of how a movant characterizes a post-judgment motion, it must be treated as a § 2255 motion if it 'asserts or reasserts a federal basis for relief' from the movant's conviction or sentence") (quoting *In re Lindsey*, 582 F.3d 1173, 1175 (10th Cir. 2009)); *cf. United States v. Montoya*, No. 22-6004, 2022 WL 3207615, at *2 n.1 (10th Cir. Aug. 9, 2022) (execution of defendant's sentence "in violation of the Fifth and Eighth Amendment[s]" not independent ground for granting compassionate release under § 3582(c)(1)(A) but the "facts that would establish a violation may well be relevant to the decision whether to grant release under the statute").

[7]      Section 3582(c) allows the court to modify a term of imprisonment in certain circumstances, including when (1) extraordinary and compelling reasons warrant a reduced sentence and a reduction is consistent with the factors under Section 3553(a), (2) a statute or Rule 35 of the Federal Rules of Criminal Procedure expressly permit the court to modify the sentence or (3) the Sentencing Commission has subsequently lowered a sentencing range and a reduced sentence is consistent with the factors under Section 3553(a).  *See* 18 U.S.C. § 3582(c).  Section 2255 is one statute expressly permitting a district court to modify a term of imprisonment.  Although Section 2255 expressly bars other writs of habeas corpus that challenge a conviction or sentence's validity, the statutory bar does not apply to "an additional, alternative, or supplemental remedy to 28 U.S.C. § 2255."  *Bradshaw*, 86 F.3d at 166 (citing *Williams v. United States*, 323 F.2d 672, 673 (10th Cir. 1963)); *see* 28 U.S.C. § 2255(e) (inmate cannot file "application for a writ of habeas corpus" under some other statute if relief can be sought under Section 2255 unless such remedy "is inadequate or ineffective to test the legality of his detention").  Based on the list of various remedies identified in Section 3582(c), one could conclude that a compassionate release motion under Section 3582(c)(1)(A) is an alternative or supplemental remedy to a motion under Section 2255.
          Likewise, in the published decisions of *Maumau* and *McGee*, the Tenth Circuit suggests that the compassionate release statute provides district courts with "discretion to consider whether *any* reasons are extraordinary and compelling."  *McGee*, 992 F.3d at 1050 (quoting *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020)) (emphasis added); *Maumau*, 993 F.3d at 837 (quoting *Brooker*, 976 F.3d at 236) (emphasis added).  In

"extraordinary and compelling" reasons properly can include arguments about the validity of a conviction or sentence, Mr. Dahda's arguments are insufficient to warrant relief under the compassionate release statute.

The court addresses each one of Mr. Dahda's asserted grounds for relief in turn.

*First*, Mr. Dahda argues that his medical conditions—prediabetes, gout, and a "circulation issue that has been ongoing in his right foot"—place him at risk of serious illness or death should he contract the COVID-19 virus.  Motion (Doc. 2992) at 5.  The government notes that Mr. Dahda's medical records reflect that he is receiving treatment for gout, but do not confirm that he has prediabetes or a serious circulation issue.  Even if the court assumes that Mr. Dahda could establish that he has prediabetes, gout, and a circulation problem in his right foot, these conditions, by themselves, do not establish extraordinary and compelling reasons for a reduced sentence.  Given the relatively mild nature of defendant's purported medical conditions, his "incarceration during the COVID-19 pandemic—when [he] has had access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction."  *United States v. McRae*, No. 21-4092, 2022 WL 803978, at *2 (10th Cir. Mar. 17, 2022) (quoting *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021)); *see also United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); *United States v. Garcia-Patino*, No. 17-20038-18-DDC, 2022 WL 1223642, at *2 (D. Kan. Apr. 26, 2022); *United States v. Logan*, No. 07-20090-01-KHV, 2022 WL 1102654, at *3 (D. Kan. Apr. 13, 2022).  The record

exercising this discretion, *McGee* states that the district court should consider all of defendant's "unique circumstances," which arguably could include circumstances related to the validity of a conviction or sentence. *McGee*, 992 F.3d at 1048.

15

reflects that Mr. Dahda has received the COVID-19 vaccine and a booster.  The court thus finds

that Mr. Dahda's incarceration during the pandemic is not an extraordinary and compelling

reason to reduce his sentence.

*Second*, Mr. Dahda argues that if sentenced today under the current Guidelines in the

2004 case, his sentencing range would be 15 to 21 months.  Motion (Doc. 2992) at 12.  In fact, as

explained above, Mr. Dahda's guideline range under the current Guidelines would be 21 to

27 months rather than the original range of 27 to 33 months.  Mr. Dahda's consecutive sentence

of 60 months in prison on the Section 924(c) offense would remain, unchanged.  For purposes of

Mr. Dahda's motion, the court assumes that under the current Guidelines, he would receive a

sentence of 84 months instead of 90 months.  So, in effect, Mr. Dahda has "overserved" his

original sentence in the 2004 case by six months.  Even so, Mr. Dahda has not shown that this

fact constitutes an extraordinary and compelling reason to reduce his revocation sentence in his

2004 case.  Indeed, the Guidelines instruct that even when a defendant has overserved a term

because of an amended guideline range, that fact, by itself, will not warrant early termination of

supervised release.  *See* U.S.S.G. § 1B1.10, cmt. n.7(B) ("the fact that a defendant may have

served a longer term of imprisonment than the court determines would have been appropriate in

view of the amended guideline range determined under subsection (b)(1) shall not, without more,

provide a basis for early termination of supervised release").  If a reduced guideline range does

not necessarily affect the length of a defendant's supervised release term, such a change by itself

also doesn't suffice to show extraordinary and compelling reasons to reduce a revocation term of

imprisonment.  Mr. Dahda essentially asks the court to reduce his revocation sentence for the

theoretical excess prison time he served on his 2004 case.  But, "[t]he objectives of supervised

release would be unfulfilled if excess prison time were to offset and reduce terms of supervised

16

release" or terms of imprisonment for violations of the terms of supervised release.  *United States v. Johnson*, 529 U.S. 53, 59 (2000).

*Third* and *fourth*, Mr. Dahda argues that two additional facts from his 2004 case establish that he has shown circumstances that, collectively, warrant his release, *i.e.*, government counsel engaged in improper conduct during plea negotiations and the two handguns identified in the Section 924(c) charge were inoperable.  Mr. Dahda first notes that the government improperly induced him to plead guilty in the 2004 case by threatening to pursue a second Section 924(c) charge which, it asserted, carried a consecutive 25-year statutory minimum sentence.  At the time, Section 924(c) required that if a defendant was convicted of two Section 924(c) charges and did not have any prior convictions, the total sentence had to be a minimum of 30 years (five years for the first conviction and 25 years consecutive for the second conviction).  *See Maumau*, 993 F.3d at 824 (before the First Step Act of 2018, Section 924(c) included a stacking provision "that required a district court to impose consecutive sentences of twenty-five years' imprisonment for second or subsequent convictions of the statute, even if those convictions occurred at the same time as a defendant's first conviction under the statute.").  As such, Mr. Dahda has not shown that conduct by government's counsel during plea negotiations was improper or otherwise constitutes an extraordinary and compelling reason to reduce his revocation sentence.[8]

Mr. Dahda next argues that the two handguns which the indictment identified in the Section 924(c) charge were not capable of firing ammunition.  Specifically, he notes that "law enforcement discovered that both firearms had their firing mechanisms duct taped to their barrels

---

[8]     In addition, the plea colloquy and PSR establish that the additional Section 924(c) charge was not the only reason Mr. Dahda pleaded guilty.  The government had a strong case against Mr. Dahda and discovered that he, in addition to his trafficking of cocaine and marijuana, had possessed multiple firearms unlawfully.

and that [Mr. Dahda] had attempted to ship them back to their manufacturer." Motion (Doc. 2992) at 6. A "firearm" is defined as "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921(a)(3)(A). Section 924(c) does not require the government to establish that the firearm, when located, was fully operable or in working order. *United States v. Henderson*, No. 08-20139-01-KHV, 2009 WL 10695556, at *1 (D. Kan. Apr. 8, 2009). Instead, the government need establish only that Mr. Dahda possessed the firearms "in furtherance of" a crime of violence or drug trafficking crime. 18 U.S.C. § 924(c)(1)(A). Here, in the plea agreement, Mr. Dahda admitted that he possessed the two firearms "in furtherance of [his] drug trafficking crimes." Plea Agreement (Doc. 68), ¶ 2 ("In the defendant's closet, where a majority of the cocaine and marijuana was located, officers found the two Cobra firearms and ammunition. The firearms were in the immediate proximity to the drugs. The defendant acknowledges and agrees that the two firearms were possessed in furtherance of the defendant's drug trafficking crimes."). Mr. Dahda's present assertion that the two firearms had duct tape around them when they were found doesn't nullify the truth he admitted in his prior sworn statement that he possessed the firearms in furtherance of drug trafficking crimes. *See United States v. Park*, No. 12-20083-11-KHV, 2017 WL 4619353, at *6 (D. Kan. Oct. 16, 2017) ("The accuracy and truth of [defendant's] statements at a Rule 11 proceeding at which the Court accepts his plea are conclusively established."). The court thus finds that Mr. Dahda's assertion about the firearms' condition when officers discovered them does not establish extraordinary and compelling reasons for release.

*Fifth*, Mr. Dahda argues that the court should find extraordinary and compelling reasons because the sentencing court in the 2012 case did not properly determine his relevant conduct

under Amendment 790 to the Guidelines.  Motion (Doc. 2992) at 12–18.  Amendment 790

clarified the "jointly undertaken criminal activity" analysis for relevant conduct purposes.  Under

the 2014 version of the Guidelines—the version applied at Mr. Dahda's original sentencing

hearing in 2015—§ 1B1.3 defined relevant conduct "in the case of a jointly undertaken criminal

activity" to include "all reasonably foreseeable acts and omissions of others in furtherance of the

jointly undertaken criminal activity."  U.S.S.G. § 1B1.3(a)(1)(B) (2014).  The Commentary to

the 2014 version of the Guidelines provided:

> Because a count may be worded broadly and include the conduct of many
> participants over a period of time, the scope of the criminal activity jointly
> undertaken by the defendant (the "jointly undertaken criminal activity") is not
> necessarily the same as the scope of the entire conspiracy, and hence relevant
> conduct is not necessarily the same for every participant.  In order to determine
> the defendant's accountability for the conduct of others under
> subsection (a)(1)(B), the court must first determine the scope of the criminal
> activity the particular defendant agreed to jointly undertake (i.e., the scope of the
> specific conduct and objectives embraced by the defendant's agreement).

U.S.S.G. § 1B1.3, cmt. n.2 (2014).

Amendment 790 amended Section 1B1.3(a)(1)(B).  This provision now defines relevant

conduct "in the case of a jointly undertaken criminal activity" to include "all acts and omissions

of others that were—(i) within the scope of the jointly undertaken criminal activity, (ii) in

furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that

criminal activity."  U.S.S.G. § 1B1.3(a)(1)(B).  Amendment 790 "restructure[d] the guideline

and its commentary to set out more clearly the three-step analysis the court applies in

determining whether a defendant is accountable for the conduct of others in a jointly undertaken

criminal activity under § 1B1.3(a)(1)(B)."  U.S.S.G. Supp. to App. C, Amend. 790, Reason for

Amendment.  While the earlier version of the Guidelines included the scope requirement in its

commentary, the amended Guideline more prominently and plainly specifies that the scope of

each defendant's jointly undertaken criminal activity depends on "the scope of the specific conduct and objectives embraced by the defendant's agreement." *United States v. Barona-Bravo*, 685 F. App'x 761, 781 (11th Cir. 2017) (quoting U.S.S.G. § 1B1.3, cmt. n.3(B)).

In Mr. Dahda's original appeal, the Tenth Circuit concluded that the district court "did not clearly err in finding that the marijuana shipments had been reasonably foreseeable and within the scope of the criminal activity undertaken by Roosevelt." *Roosevelt Dahda*, 852 F.3d at 1293. While Mr. Dahda did not challenge and the Tenth Circuit did not directly address whether the acts of others were "in furtherance of th[e jointly undertaken] criminal activity," this finding seems implicit in Judge Vratil's findings at the initial sentencing hearings. In addition, when she resentenced Mr. Dahda, Judge Vratil specifically recognized Amendment 790, but found that it did not make any difference when calculating the amount of marijuana attributable to Mr. Dahda. *See* Transcript Of Resentencing Hearing (Doc. 2737) at 9 ("the shipments which are listed on the chart satisfy all three of the requirements from the current version of Section 1B1.3 of the federal sentencing guidelines"); *id.* at 11 ("I read [Amendment 790] to more clearly articulate the three-step process that the court applies in determining whether the defendant is accountable for the conduct of others in the jointly-undertaken criminal activity. But on the facts of this case, I don't see that it leads us to a different outcome."). In Mr. Dahda's appeal after his resentencing, he did not object to Judge Vratil's findings based on Amendment 790. Because Mr. Dahda did not raise the issue on appeal, Judge Vratil's ruling at resentencing—which specifically addressed his objection under Amendment 790—is the law of the case.[9]  *See Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1241 (10th Cir. 2016)

---

[9]      In any event, Mr. Dahda's brother—Los Dahda—argued on his appeal after resentencing that Judge Vratil failed to engage in the three-step process under revised Section 1B1.3(a)(1)(B) which incorporated Amendment 790 and did not make specific findings on each prong. *See United States v. Los Dahda*, 842 F. App'x 243, 246 (10th Cir. 2021). On a substantially similar record to the one for this matter, the Tenth Circuit found that the district court

(law of the case doctrine precludes "relitigation of issues either expressly or implicitly resolved in prior proceedings in the same court").  Mr. Dahda's failure to succeed with this sentencing objection is not an extraordinary and compelling reason for his release.

None of the five factors raised by Mr. Dahda, even when considered collectively, constitute extraordinary and compelling reasons for release.

### 3.  Sentencing Factors in Section 3553(a)

Even if Mr. Dahda had presented extraordinary and compelling reasons for a sentence reduction, his motion still fails at the third step of the § 3582(c)(1)(A) analysis.  Before the court may reduce a defendant's term of imprisonment under § 3582(c)(1)(A), the court must consider whether a defendant poses a danger to the community and the other relevant sentencing factors under § 3553(a).  18 U.S.C. § 3582(c)(1)(A).

Mr. Dahda presently is in custody on both his revocation sentence (30 months) in the 2004 case and his sentence of 141 months in his 2012 case.  Mr. Dahda committed a serious drug trafficking felony offense which included a large scale drug conspiracy involving some 43 individuals.  The court attributed a total of 486 kilograms of marijuana to him.  The court added three offense levels under the Guidelines because Mr. Dahda had acted as a manager or supervisor of criminal activity involving five or more participants.  At resentencing, the court calculated a guideline range of 108 to 135 months.  The court imposed a total sentence of 141 months in prison, which reflected a low-end guideline sentence of 108 months and a 33-month upward variance because Mr. Dahda had obstructed justice.  In the 2004 case, based on Mr. Dahda's violations of his terms of supervised release, the court revoked his supervised

---

had applied amended Section 1B1.3 and made specific findings that the disputed pallets of marijuana were in furtherance of the jointly-undertaken criminal drug conspiracy.  *See id.*  In addition, the Circuit held that Los Dahda had waived his arguments that the district court's findings were procedurally or substantively inaccurate.  *See id.* at 246–47.

release and imposed a sentence of 30 months in prison to run consecutive to the term of imprisonment in the 2012 case. The nature and circumstances of the offense do not favor Mr. Dahda's release.[10]

In addition to Mr. Dahda's conduct leading to his current terms of imprisonment, the court notes the seriousness of his original convictions in the 2004 case. They involved distributing cocaine and marijuana, as well as his possession of multiple firearms.

From a health perspective, Mr. Dahda appears to have some underlying health conditions. But it doesn't appear that these conditions place him at risk of complications should he contract COVID-19 or otherwise impact what is considered an appropriate sentence under Section 3553(a). When the court sentenced Mr. Dahda, it adhered to the statutory mandate requiring it to impose a sentence that was "not greater than necessary." 18 U.S.C. § 3553(a). Reducing Mr. Dahda's sentence would produce a sentence no longer reflecting the gravity of his criminal conduct. Likewise, such a reduced sentence no longer would furnish adequate deterrence to criminal conduct or provide just punishment for his crime. In sum, the pertinent sentencing factors in 18 U.S.C. § 3553(a) do not favor the reduction Mr. Dahda's motion seeks.

---

[10] Mr. Dahda asks the court to consider that, based on his firearm convictions in the 2004 case, he is not eligible for the BOP to grant him a discretionary reduction of his sentence under the First Step Act or based on his participation in the Residential Drug Abuse Program ("RDAP"). *See* Motion (Doc. 2992) at 10. BOP administers RDAP which typically is a nine-month intensive substance abuse treatment program. BOP has discretion to reduce an inmate's sentence up to one year if the inmate successfully completes RDAP and meets certain other requirements. 18 U.S.C. § 3621(e). The BOP categorically denies early release eligibility to inmates who have a "current felony conviction" of a violent offense which includes an offense involving the use or possession of a firearm. 28 C.F.R. § 550.55(b)(5)(ii) (prisoner ineligible for reduction if he has current felony conviction for "offense that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device)"); *see* 18 U.S.C. § 3621(e)(2)(B) (authorizing BOP to reduce sentence of "prisoner convicted of a nonviolent offense"). The fact that Mr. Dahda is categorically ineligible for the BOP to grant a discretionary reduction of his sentence merely serves to reinforce this court's conclusion that, based in part on his firearm convictions in the 2004 case, the Section 3553(a) factors do not favor a reduced sentence.

III.     Conclusion

As explained above, the court dismisses Mr. Dahda's motion under Section 3582(c)(2) for lack of jurisdiction.  Also, Mr. Dahda has not shown extraordinary and compelling reasons for relief under Section 3582(c)(1)(A), nor has he shown that Section 3553(a)'s sentencing factors favor the reduction his motion seeks.  The court thus denies Mr. Dahda's motion for compassionate release.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Roosevelt Dahda's Motion for a Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) & (c)(2) (Doc. 2992 in Case No. 12-20083-02 and Doc. 94 in Case No. 04-20060-01) is dismissed to the extent that he seeks relief under 18 U.S.C. § 3582(c)(2) and denied to the extent that he seeks relief under 18 U.S.C. § 3582(c)(1)(A).

**IT IS SO ORDERED.**

**Dated this 6th day of September, 2022, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**