## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROOSEVELT RICO DAHDA (02),

    Defendant.

Case No. 12-20083-02-DDC

## MEMORANDUM AND ORDER

On December 12, 2019, after remand from the Tenth Circuit, the court sentenced

defendant Roosevelt Dahda to 141 months in prison. On April 30, 2021, the Tenth Circuit

affirmed. This matter comes before the court on Mr. Dahda's pro se[1] Amended Petition to

Vacate or Set Aside a Federal Sentence Pursuant to 28 U.S.C. § 2225 (Doc. 3032). The

government has filed a response in opposition to Mr. Dahda's motion (Doc. 3054). Mr. Dahda

filed a reply (Doc. 3057). For reasons explained below, the court denies Mr. Dahda's motion.[2]

---

[1]     Because Mr. Dahda proceeds pro se, the court construes his filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court does not assume the role of advocate for a pro se litigant. *Id.*

[2]     Mr. Dahda has filed several motions for judicial notice of published cases in the Tenth Circuit, certain filings in this matter, and other documents. *See* Roosevelt Dahda's Motion for Judicial Notice Pursuant to Fed. R. Evid. 201 (Doc. 3025); Petitioner's Second Motion for Judicial Notice Pursuant to Federal Rule of Evidence 201 (Doc. 3033); and Roosevelt Dahda's Third Request for Judicial Notice In Support of Amended Petition Pursuant to Federal Rule of Evidence 201 (Doc. 3040). Rule 201 of the Federal Rules of Evidence applies to "judicial notice of adjudicative facts only in limited circumstances." *United States v. Hunt*, 63 F.4th 1229, 1250 (10th Cir. 2023); *see Chapman v. Chast Manhattan Mortg. Corp.*, No. 04-CV-0859-CVE-FHM, 2007 WL 4268774, at *2 n.7 (N.D. Okla. Nov. 30, 2007) ("the procedure for judicial notice under Fed. R. Evid. 201 applies only to adjudicative facts"). At this preliminary stage and for purposes of Mr. Dahda's Section 2255 motion, the court is not determining adjudicative facts. So, the Rules of Evidence do not apply. *See Getty Petro. Mktg., Inc. v. Cap. Terminal Co.*, 391 F.3d 312, 322 (1st Cir. 2004) (J. Lipez, concurring) ("Judicial notice of law is the name given to the commonsense doctrine that the rules of evidence governing admissibility and proof of documents

## I.    Background

On July 11, 2012, a grand jury charged Mr. Dahda and others with conspiracy to possess with intent to distribute and to distribute five kilograms or more of a mixture and substance containing cocaine; to possess with intent to distribute and to distribute 1,000 kilograms or more of marijuana; and maintaining drug-involved premises, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(ii) and (b)(1)(A)(vii); 21 U.S.C. §§ 846, 856 and 18 U.S.C. § 2.  The Indictment also charged Mr. Dahda with multiple other drug crimes.  On July 23, 2014, a jury found Mr. Dahda guilty on multiple counts of the Second Superseding Indictment (Doc. 462) including conspiracy to possess marijuana with intent to distribute it and conspiracy to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 (Count 1), five counts of using a communication facility to facilitate a drug trafficking offense, in violation of 21 U.S.C. § 843(b) (Counts 42, 45, 53, 55 and 70), two counts of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D) (Counts 43 and 49), possession with intent to distribute and distribution of marijuana within 1,000 feet of a playground, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D), and 860 (Count 56), and attempted possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D) (Count 73).  As it applied to the conspiracy charge, the jury found that "the overall scope of the agreement involved more

---

generally do not make sense to apply to statutes or judicial opinions—which are technically documents—because they are presented to the court as law, not to the jury as evidence."); *see also Chapman*, 2007 WL 4268774, at *2 ("federal courts are bound to apply precedent without formally taking judicial notice of law").  Instead, the court evaluates what one properly can characterize as "legislative facts" and determines whether "the files and records of the case conclusively show that [Mr. Dahda] is entitled to no relief."  28 U.S.C. § 2255(b); *see Hunt*, 63 F.4th at 1250 ("When the resolution of a dispute turns on legislative facts, courts regularly relax the restrictions on judicial inquiry.").  The court thus considers the materials Mr. Dahda has submitted as part of the "files and records of the case," but does not take formal judicial notice of such materials under the Rules of Evidence.  Therefore, the court denies Mr. Dahda's motions for judicial notice.

than 1,000 kilograms of marijuana."  Instructions To The Jury (Doc. 1430) filed July 23, 2014, No. 19.

At the original sentencing hearing, the court attributed a total of 725.7 kilograms of marijuana to Mr. Dahda.  PSR (Doc. 2043) filed September 22, 2015, ¶ 157.  Because Mr. Dahda's offense involved at least 700 kilograms but less than 1,000 kilograms of marijuana, he registered a base offense level of 28.  U.S.S.G. § 2D1.1(c)(6); *see* PSR (Doc. 2043), ¶ 162.  The court added three levels because Mr. Dahda had acted as a manager or supervisor (but not an organizer or leader) of criminal activity involving five or more participants, U.S.S.G. § 3B1.1(b).  Mr. Dahda's total offense level thus was 31, with a criminal history category III, producing a guideline range of 135 to 168 months.  *See* PSR (Doc. 2043), ¶ 213.  Based on Mr. Dahda's conviction on Count 1 and the government's notice of his prior felony drug convictions, he faced a statutory range of 20 years to life in prison.  21 U.S.C. §§ 841(b)(1)(A), 851.  At sentencing, and in response to Mr. Dahda's objection to the statutory range, the government agreed to waive the statutory minimum under Section 841(b)(1)(A) and requested that the court sentence Mr. Dahda under Section 841(b)(1)(C).  Because defendant had a prior conviction, his statutory range on Count 1 included no minimum sentence and a maximum term of 30 years in prison.  *See* 21 U.S.C. § 841(b)(1)(C).

On September 29, 2015, United States District Judge Kathryn H. Vratil of our court sentenced Mr. Dahda to 201 months in prison and 10 years of supervised release.[3]  The sentence included an upward variance of 33 months above the upper end of the guideline range because

---

[3]    On September 29, 2015, based on Mr. Dahda's violation of the terms of his supervised release in the 2004 case, Judge Vratil sentenced him to 30 months, with the sentence in that case to run consecutively to the sentence imposed in the 2012 case.  *See* Judgment In A Criminal Case (Doc. 93 in Case No. 04-20060-01) at 3, filed October 6, 2015.  Mr. Dahda did not appeal his revocation or the sentence for it.

Mr. Dahda had pressured co-defendant Sadie Brown to dissuade her from cooperating with the government.[4]  On April 4, 2017, the Tenth Circuit affirmed Mr. Dahda's convictions, but remanded for resentencing based on the calculation of the quantity of marijuana attributable to him.  *United States v. Roosevelt Dahda*, 852 F.3d 1282, 1298 (10th Cir. 2017) (*Roosevelt Dahda I*), *aff'd*, 138 S. Ct. 1491 (2018).

At the resentencing hearing, the court attributed a total of 486 kilograms of marijuana to Mr. Dahda—a reduction of some 240 kilograms.  Transcript of Resentencing (Doc. 2738) at 16.  Because Mr. Dahda's offense involved at least 400 kilograms but less than 700 kilograms of marijuana, his base offense level was 26.  U.S.S.G. § 2D1.1(c)(7).  The court again added three levels for his managerial role in the offense, U.S.S.G. § 3B1.1(a).  Mr. Dahda's total offense level was 29, with a criminal history category III, which resulted in a guideline range of 108 to 135 months.  *See* Revised Presentence Investigation Report (Doc. 2689), ¶ 217.  Based on Mr. Dahda's convictions on Count 1 and the government's earlier agreement to waive the statutory minimum under Section 841(b)(1)(A), he faced a statutory range of zero to 30 years in prison.  *See* 21 U.S.C. § 841(b)(1)(C).

---

[4]      Judge Vratil reasoned that Mr. Dahda had "threaten[ed], intimidat[ed] or unlawfully influenc[ed] Ms. Brown's] decisions in this case," "attempted to get her to testify falsely with regard to her petition to withdraw her guilty plea" and "basically coach[ed] her on how to obstruct justice in her own case in order to protect [him] and [his] brother."  *See* Transcript of Sentencing and Revocation Hearing (Doc. 2190) at 50; *see also id*. at 46 ("this seems like classic obstruction or the attempt to obstruct the administration of justice with a co-defendant").  Judge Vratil concluded that Mr. Dahda's actions resulted in Ms. Brown "serving somewhere between 12 and 33 additional months in prison because she did not qualify for the safety valve like she otherwise would have."  *See id*. at 49–50; *see also id*. at 50–51 ("And as I mentioned earlier, I think you are legally and morally responsible for that extra time that she's doing.  I can't recall seeing such a more–such a dramatic case of exploiting somebody and taking advantage of their feelings and subservient role with regard to a particular defendant.  And so I propose to depart upward from the guideline range, and the sentence that I would propose is 201 months.  I come up with that number starting with the premise that you would qualify—that a sentence at the high end of the guideline range would be appropriate.  Thirty-three months is the additional time that she's serving and I don't see any reason why you shouldn't also serve that.  Also, if we had calculated your offense level to include the obstruction of justice, you would have been at Level 33 which calls for a custody range of 168 to 210 months.  So 201 months is squarely within the middle of that and that is the sentence that I would propose.").

4

On December 12, 2019, Judge Vratil resentenced Mr. Dahda to a controlling term of 141 months in prison and six years of supervised release.  This sentence reflected an upward variance of six months above the upper end of the guideline range because Mr. Dahda had pressured co-defendant Sadie Brown not to cooperate with the government.[5]  On December 21, 2019, Mr. Dahda appealed.  *See* Notice Of Appeal (Doc. 2718).  On April 30, 2021, the Tenth Circuit affirmed.  *United States v. Roosevelt Dahda*, 854 F. App'x 267 (10th Cir.) (*Roosevelt Dahda II*), *cert. denied*, 142 S. Ct. 323 (2021).

Mr. Dahda now seeks to vacate his convictions and sentence under 28 U.S.C. § 2255. Mr. Dahda argues that (1) the court erroneously sentenced him on Counts 1 and 56 under the statutory range in subsection (b)(1)(C) of § 841 rather than under the default statutory range in subsection (b)(1)(D), (2) the court should vacate his sentence on Counts 43, 49, 56, and 73 because the court didn't conduct a Section 851 colloquy and, at the first sentencing, the government withdrew the Section 851 enhancement, (3) the court improperly imposed an upward variance of 33 months for obstruction of justice, and (4) the government violated his right to counsel under the Sixth Amendment when it recorded and listened to his telephone conversations with counsel from Corrections Corporation of America ("CCA") in Leavenworth, Kansas.  Amended Petition to Vacate (Doc. 3032) at 7–9; Amended Arguments and Authorities (Doc. 3041) at 3–25.  He also argues that his counsel at the first sentencing and on appeal—Mark L. Bennett and Roger Luedke—provided ineffective assistance of counsel because (a) at or before sentencing, they did not inform him of "the complete consequences of the government's filing of an enhancement information [under 21 U.S.C. § 851] and how that would affect and

---

[5]     To support the upward variance, Judge Vratil largely incorporated the reasons that she had expressed at the original sentencing.  *See* Transcript of Resentencing (Doc. 2738) at 29 ("The way I come up with that is looking at the low end of the guidelines, which would be 108 months, and adding 33 months for the Sadie Brown issue for the reasons that I've already stated and previously imposed and that the . . . Tenth Circuit Court of Appeals has already affirmed.").

impact Petitioner's statutory maximum sentence" on Counts 43, 49, 56, and 73; (b) they did not

maintain his objections to the Section 851 enhancement at sentencing; (c) they did not appeal the

Section 851 enhancement; and (d) at or before sentencing, counsel did not investigate and object

to the illegal searches of his cell (and Ms. Brown's cell) or the use of the letters found in Ms.

Brown's cell to support a 33-month upward variance of Mr. Dahda's sentence.  Amended

Petition to Vacate (Doc. 3032) at 9; Amended Arguments and Authorities (Doc. 3041) at 25–30.

Finally, he argues that appellate counsel—Robert T. Fishman—provided ineffective assistance

on appeal of his revised sentence because he did not argue that the government unlawfully

recorded and listened to his conversations with counsel.  Amended Petition to Vacate (Doc.

3032) at 9.

## II.      Legal Standard Governing Motions Under 28 U.S.C. § 2255

Federal law permits federal prisoners to attack the legality of their sentences in collateral

proceedings.  Title 28 U.S.C. § 2255(a) provides:

> A prisoner in custody under sentence of a court established by Act of
> Congress claiming the right to be released upon the ground that the sentence was
> imposed in violation of the Constitution or laws of the United States, or that the
> court was without jurisdiction to impose such sentence, or that the sentence was in
> excess of the maximum authorized by law, or is otherwise subject to collateral
> attack, may move the court which imposed the sentence to vacate, set aside or
> correct the sentence.

28 U.S.C. § 2255(a).

Collateral "relief under § 2255 is generally confined to situations where (a) the

'convictions and sentences [were] entered by a court without jurisdiction,' (b) the sentence

imposed was outside of the statutory limits, (c) a constitutional error occurred, or (d) a non-

constitutional error of law or an error of fact occurred that constituted a fundamental defect

which inherently resulted in a complete miscarriage of justice, *i.e.*, that rendered the entire

proceeding irregular and invalid." *United States v. Fields*, 949 F.3d 1240, 1246 (10th Cir. 2019) (quoting *United States v. Addonizio*, 442 U.S. 178, 185–86 (1979)), *cert. denied*, 141 S. Ct. 449 (2020).

Some § 2255 motions merit hearings. "Section 2255(b) states, in pertinent part, that '[u]nless the [2255] motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the [district] court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.'" *Id.* (quoting 28 U.S.C. § 2255(b)). "The Supreme Court has interpreted this statutory language to mean that a hearing is unnecessary in those instances (a) 'where the issues raised by the motion were conclusively determined either by the motion itself or by the files and records in the trial court,' or (b) where the motion alleges circumstances 'of a kind that the District Judge could completely resolve by drawing upon his own personal knowledge or recollection.'" *Id.* (quoting *Machibroda v. United States*, 368 U.S. 487, 494–95 (1962)).

## III.    Discussion

### A.    Challenge to Sentence Under *Alleyne*

Mr. Dahda claims that the court erroneously sentenced him on Counts 1 and 56 under the statutory range in subsection (b)(1)(C) of § 841 rather than under the default statutory range in subsection (b)(1)(D).  *See* Amended Argument and Authorities (Doc. 3041) at 3–11 (citing *Alleyne v. United States*, 570 U.S. 99 (2013)).  Absent a jury finding that more than 1,000 kilograms of marijuana was "individually attributable" to him, the court erred, he argues, by altering the prescribed statutory range of zero to five years in prison under subsection (b)(1)(D).[6]  *See id.* at 4.

---

[6]      For Count 1, the jury found Mr. Dahda guilty of conspiracy to (1) possess with intent to distribute marijuana, and (2) distribute marijuana.  *See* Verdict (Doc. 1433) at 7.  As it applied to these agreements,

The Tenth Circuit rejected a substantially similar argument in the appeal challenging Mr.

Dahda's original sentence as well as the appeal taken in the case against his brother, Los Dahda.

*Roosevelt Dahda I*, 852 F.3d at 1292 (applying reasoning from companion *Los Dahda* decision;

"Roosevelt's sentence under 21 U.S.C. § 841(b)(1)(C) did not constitute error, much less plain

error" based on jury finding that conspiracy involved 1,000 kilograms or more of marijuana); *see*

*also United States v. Los Dahda*, 853 F.3d 1101, 1116–17 (10th Cir. 2017) (*Los Dahda I*)

(rejecting challenge that his "sentence [beyond the 5-year statutory maximum in

Section 841(b)(1)(D)] violates the Constitution because the jury did not specifically find the

marijuana quantity involved in the conspiracy"), *aff'd*, 138 S. Ct. 1491 (2018).  As the Tenth

Circuit explained in *Los Dahda I*, the district court didn't err by applying the statutory range

under Section 841(b)(1)(C)—rather than Section 841(b)(1)(D)—because the jury found beyond a

reasonable doubt that "the conspiracy had involved 1,000 kilograms or more of marijuana."  *Los*

*Dahda I*, 853 F.3d at 1117; *see id.* at 1116–17 (because "the marijuana quantity, 1,000

kilograms, was an element of the charged conspiracy" and triggered higher statutory range, it

was unnecessary for verdict form to specify marijuana quantity).[7]

Both the law of the case doctrine and the mandate rule compel the court to reject Mr.

Dahda's present argument that the court erroneously sentenced him on Counts 1 and 56 under

subsection (b)(1)(C) of § 841 rather than under the default statutory range in

subsection (b)(1)(D).  *See United States v. Los Dahda*, 842 F. App'x 243, 245–46 (10th Cir.

2021) (*Los Dahda II*) (affirming district court decision to resentence Los under § 841(b)(1)(C),

not § 841(b)(1)(D) in part because *Los Dahda I* is law of the case); *see also United States v.*

---

the jury found that "the overall scope of the agreement involved more than 1,000 kilograms of
marijuana."  Instructions To The Jury (Doc. 1430), No. 19.

[7]      As in Roosevelt's case, the government agreed to waive the 10-year mandatory minimum under
§ 841(b)(1)(A).  The court thus sentenced Los under § 841(b)(1)(C).  *Los Dahda I*, 853 F.3d at 1116.

*Dutch*, 978 F.3d 1341, 1345 (10th Cir. 2020) (the mandate rule which follows from the law of the case doctrine "requires the district court to strictly comply with any mandate rendered by this court on remand;" "[t]he mandate consists of our instructions to the district court at the conclusion of the opinion, and the entire opinion that preceded those instructions") (citations and quotations omitted); *Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1241 (10th Cir. 2016) (law of the case doctrine precludes "relitigation of issues either expressly or implicitly resolved in prior proceedings in the same court").

In addition to the obstacles imposed by the law of the case doctrine and the mandate rule, Mr. Dahda's claim lacks substantive merit. As this court has explained when deciding the habeas motion of Mr. Dahda's brother, the statutory limits of Section 841(b)(1)(D) do not apply here because the jury instructions included as an element of the crime, that the "overall scope of the agreement" involved more than 1,000 kilograms of marijuana. Instructions To The Jury (Doc. 1430), No. 19; *Los Dahda I*, 853 F.3d at 1117; *see United States v. Ford*, 536 F. Supp. 3d 848, 853 (D. Kan. 2021) ("Because the jury instructions required the jury to find that '[t]he overall scope of the agreement involved more than 5 kilograms of cocaine or more than 280 grams of cocaine base ("crack cocaine"),' the Court properly sentenced defendant on Count 1 under the statutory penalties under Section 841(b)(1)(A), *i.e.* ten years to life.") (citing *Los Dahda I*, 853 F.3d at 1116–17), *appeal dismissed*, No. 21-3083, 2021 WL 5467261 (10th Cir. July 21, 2021); *see also United States v. Collazo*, 984 F.3d 1308, 1336 (9th Cir. 2021) (en banc) (defendant convicted of conspiracy under § 846 is subject to enhanced statutory penalties under § 841(b)(1)(A)–(B) if government proves beyond reasonable doubt underlying § 841(a)(1) offense "involved" drug type and quantity set forth in § 841(b)(1)(A)–(B)). Indeed, the court's instruction on the element of drug type and quantity closely tracked the then-current (and

present) Tenth Circuit Pattern Instructions, which require only that the "overall scope of the conspiracy involved" the requisite statutory quantity, not that a defendant is personally responsible for that quantity for sentencing purposes.  *Compare* Tenth Circuit Pattern Criminal Jury Instructions § 2.87 (2021 ed. and 2011 ed.) (fifth element requires government to prove that "the overall scope of the conspiracy involved at least [name amount] of [name controlled substance]"); *with* Instructions To The Jury (Doc. 1430), No. 19 (fifth element requires government to prove that "the overall scope of the agreement involved more than 1,000 kilograms of marijuana").

Trying to support his argument, Mr. Dahda cites *United States v. Ellis*, 868 F.3d 1155 (10th Cir. 2017).  But the court is bound to follow the Tenth Circuit's prior published opinions in his case and the case of his brother, Los Dahda.  "The panel decision in *Ellis*, which involved a challenge to a statutory minimum, did not and could not overrule the prior panel decisions in *Los Dahda* and *Roosevelt Dahda*."  *United States v. Roosevelt Dahda*, 2019 WL 6840112, at *3 (D. Kan. Dec. 16, 2019) (citing *United States v. Elliott*, 937 F.3d 1310, 1316 n.5 (10th Cir. 2019) (one panel cannot depart from prior holdings absent en banc reconsideration or superseding contrary decision by Supreme Court)); *see also Los Dahda II*, 842 F. App'x at 246 ("As a panel decision, *Ellis* could not overrule [*Los*] *Dahda I*.").  Mr. Dahda essentially argues that the Tenth Circuit did not correctly decide his direct appeal based on *Alleyne* and *United States v. Dewberry*, 790 F.3d 1022 (10th Cir. 2015).  *See* Amended Arguments and Authorities (Doc. 3041) at 4–5.  "The remedy for any such purported error would have been a panel rehearing, rehearing en banc or subsequent Supreme Court action."  *Roosevelt Dahda*, 2019 WL 6840112, at *3.

Even if *Alleyne* required that the statutory limits of Section 841(b)(1)(D) apply to conspiracies that do not allege that a defendant was personally responsible for distributing a specific amount of marijuana, the court arguably could have stacked the sentences on the various counts to reach a guideline range exceeding the statutory maximum for a single count of conviction.  *See* Memorandum and Order (Doc. 2620) at 10–11 (citing U.S.S.G. § 5G1.2(d), App. Note 1 to U.S.S.G. § 5G1.2(d), and 18 U.S.C. § 3584).

In sum, Mr. Dahda has not established any purported error under *Alleyne* warrants relief under Section 2255.

B.      Challenge to Enhancement of Sentence Under 21 U.S.C. § 851

When a defendant has prior convictions of certain types, the government may seek an enhanced sentence if it files an information before trial.  *See* 21 U.S.C. § 851.  Section 851 requires that the government state in writing the previous convictions to be relied upon and "provides a procedural mechanism to notify the defendant of the allegation of prior convictions and to allow him an opportunity to challenge those convictions."  *United States v. Fulton*, 433 F. App'x 692 (10th Cir. 2011) (citations omitted); *see* 21 U.S.C. § 851(a)–(c).  If the government files an information that it intends to seek an enhancement for a prior conviction under Section 851, "the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence."  21 U.S.C. § 851(b).  A defendant cannot challenge the validity of a prior conviction which occurred more than five years before the date of the information alleging such prior conviction.  21 U.S.C. § 851(e).

Mr. Dahda argues that the court should vacate the Section 851 enhancement of his sentence on Counts 43, 49, 56, and 73 because (1) the court did not conduct a Section 851(b) colloquy and (2) at the first sentencing, the government withdrew the Section 851 enhancement.

1.    Failure to Conduct Section 851 Colloquy

On a direct appeal, the question whether the district court properly conducted a Section 851(b) colloquy is subject to harmless-error review. *United States v. Bagby*, 696 F.3d 1074, 1088 (10th Cir. 2012).  A district court's failure to conduct a proper Section 851 colloquy is "harmless unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect." *Id.* (quotation marks and citation omitted).  To obtain relief in the context of his Section 2255 motion, Mr. Dahda must show that the absence of a formal Section 851 colloquy "constituted a fundamental defect which inherently result[ed] in a complete miscarriage of justice," *i.e.*, that "render[ed] the entire proceeding irregular and invalid." *Addonizio*, 442 U.S. at 185–86 (quotation marks and citation omitted).

Even under the more lenient standard for challenges on direct appeal, Mr. Dahda has failed to show that he is entitled to relief.  Before his initial sentencing, defendant objected to the Section 851 enhancement because (1) the date of his prior conviction post-dated the start of the conspiracy in this case, (2) the government's filing of the enhancement constituted a breach of the plea agreement in the 2004 case, and (3) under the doctrine of judicial estoppel, the government could not seek an enhancement against Mr. Dahda because it did not seek such an enhancement against Wayne Swift, one of Mr. Dahda's co-defendants in this case. *See* Defendant Roosevelt Rico Dahda's Response to the Government's 21 U.S.C. § 851 Enhancement Information and His Request for an Amendment Thereto (Doc. 2035) at 2–8. Judge Vratil overruled each of these objections.  Despite Mr. Dahda's objections, he did not

dispute the existence or validity of his conviction in the 2004 case. *See id*. at 2 ("defendant is not challenging the existence or validity of his prior conviction").

Mr. Dahda argues that the lack of a formal Section 851 colloquy prejudiced him because he did not understand that the court intended to enhance his statutory maximum for Counts 43, 49, 56, and 73. *See* Amended Arguments and Authorities (Doc. 3041) at 14. By the time of Mr. Dahda's resentencing in December of 2019, however, he had received ample notice that the court intended to apply an enhanced statutory maximum on these counts. *See* Original Judgment (Doc. 2087) filed October 6, 2015 at 3 (imposing sentence of 201 months on Count 56, which was greater than the statutory maximum of 120 months if no Section 851 enhancement applied); Revised PSIR (Doc. 2689) filed November 18, 2019, at 2 (noting enhanced penalties under Section 851 for Counts 1, 43, 49, 56, and 73); *id*., ¶ 216 (same); *id*., ¶¶ 379–81 (noting Mr. Dahda's objection to enhancement on Counts 43, 49, 56, and 73 because the government withdrew the Section 851 information at first sentencing). Indeed, at resentencing, government counsel specifically explained that the Section 851 enhancement increased the statutory maximum on Counts 43, 49, 56, and 73. Transcript of Resentencing (Doc. 2738) at 17–18. In response, defense counsel stated that because the government had taken the Section 851 "off the table" at the first sentencing, the statutory maximum on Count 56 should be ten years instead of 20 years. *Id*. at 18–19. Judge Vratil responded that she disagreed and that defense counsel could raise that issue on appeal. *Id*. at 19. In sum, Mr. Dahda could not reasonably have understood that the court at resentencing did not intend to sentence him based on the enhanced statutory maximum penalties on Counts 43, 46, 56, and 73. He therefore has not shown any prejudice from the court's failure to conduct a formal Section 851(b) colloquy.

2.   Whether the Government Withdrew the Section 851 Enhancement

Next, Mr. Dahda argues that the court should vacate the enhancement of his sentence on Counts 43, 49, 56, and 73 for a prior conviction because at sentencing, the government withdrew the Section 851 enhancement.  The Tenth Circuit rejected this same claim on Mr. Dahda's appeal after resentencing.  Specifically, it determined that at the initial sentencing, the government "did not withdraw the § 851 notice, but rather acknowledged it was immaterial [to the sentence on] Count 1."  *Roosevelt Dahda II*, 854 F. App'x at 268–69.  Both the law of the case doctrine and the mandate rule compel the court to deny Mr. Dahda's present claim that at his initial sentencing, the government withdrew the Section 851 notice.  *See Dutch*, 978 F.3d at 1345 (mandate rule "requires the district court to strictly comply with any mandate rendered by this court on remand") (quotation marks and citation omitted); *Entek*, 840 F.3d at 1241 (law of the case doctrine precludes relitigation of issues "expressly or implicitly" resolved in prior proceedings).

C.   Obstruction of Justice Variance

Mr. Dahda also argues that the court erred when it imposed a 33-month upward variance based on his communications with a co-defendant, Sadie Brown.[8]  Specifically, Mr. Dahda argues that (1) the court failed to make particularized findings under U.S.S.G. § 3C1.1, (2) insufficient evidence supported the enhancement, (3) his letters to Ms. Brown were protected speech under the First Amendment, and (4) the government illegally acquired the letters by searching his and Ms. Brown's cells.  Amended Petition to Vacate (Doc. 3032) at 8; Amended Arguments and Authorities (Doc. 3041) at 27–32.

---

[8]      On appeal after resentencing, the Tenth Circuit—apparently accepting Mr. Dahda's description—noted that the district court reimposed a "33-month upward variance."  854 F. App'x at 269–70.  Technically, at resentencing, Judge Vratil only varied upward six months from the high end of the guideline range, which was 33 months higher than the low end of the guideline range.

1.     Failure to Make Particularized Findings

Mr. Dahda argues that the court, at resentencing, failed to make particularized findings that he obstructed justice as required under Section 3C1.1 of the Guidelines.  But Judge Vratil imposed a *variance* based on the Section 3553(a) factors—not an *enhancement* under Section 3C1.1.  *See* Amended Statement of Reasons (Doc. 2740) at 3.  The court thus liberally construes Mr. Dahda's challenge about the absence of particularized findings as an objection to the procedural reasonableness of his sentence, which included an upward variance.

For a sentence to qualify as a procedurally reasonable one, the district court must "adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range."  *Gall v. United States*, 552 U.S. 38, 51 (2007); *Rita v. United States*, 551 U.S. 338, 356 (2007) (sentencing court should articulate enough to satisfy the appellate court that it has "a reasoned basis for exercising [its] own legal decisionmaking authority").  The length of explanation necessary depends on the degree of the variance—a "major departure should be supported by a more significant justification than a minor one."  *Gall*, 552 U.S. at 50 (sentencing court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance").  To secure relief based on his Section 2255 motion, Mr. Dahda must show that the procedural unreasonableness of his sentence "constituted a fundamental defect which inherently result[ed] in a complete miscarriage of justice," *i.e.*, that "render[ed] the entire proceeding irregular and invalid."  *Addonizio*, 442 U.S. at 185–86 (quotation marks and citation omitted).

As noted above, Judge Vratil supported the upward variance taken at resentencing by incorporating the reasons that she had given at the original sentencing.  They explained an upward variance of 33 months.  *See* supra note 4.  Judge Vratil relied on the fact that Mr. Dahda

didn't receive an enhancement under Section 3C1.1 for his obstructive conduct.  *See* Amended Statement of Reasons (Doc. 2740) at 3 (because Mr. Dahda did not receive enhancement, variance accounts for his obstructive conduct that affected Ms. Brown's sentence).  At the original sentencing, Judge Vratil explained that Mr. Dahda had threatened, intimidated or unlawfully influenced Ms. Brown's decisions in this case, tried to get her to testify falsely about her petition to withdraw her guilty plea and, basically, coached her how to obstruct justice in her case in order to protect him and his brother.  *See* supra note 4.  At the earlier sentencing, Judge Vratil imposed a variance of 33 months above the high end of the guideline range because (1) she found that Mr. Dahda was legally and morally responsible for Ms. Brown serving somewhere between 12 and 33 additional months in prison and (2) a sentence of 201 months (based on a 33-month upward variance) would fall within the guideline range if his offense level had included an enhancement for obstruction of justice.  *See* Transcript of Sentencing (Doc. 2190) at 49–51.

In light of the record Judge Vratil already had made about the obstruction issue— including an appeal which affirmed the imposition of a 33-month variance for the same reason— Judge Vratil more than adequately explained her reasoning and analysis for the upward variance of six months at resentencing.  *See United States v. Zamarripa-Favela*, 586 F. App'x 461, 465 (10th Cir. 2014) (sentencing court "is not obligated to explain in detail its reasons for selecting the sentence it chooses, even when there is an upward variance"); *United States v. McIntosh*, 573 F. App'x 760, 764 (10th Cir. 2014) (sentencing court must explain reasoning and analysis so that the appellate court has "reasonable indicia" that the sentence was proportional to the crime committed in light of the Section 3553(a) factors (quotation and citation omitted)).  In addition, no lengthy explanation was required because the degree of variance from the Guidelines was

16

minor—just six months above the high end of the guideline range, less than 5% of the custody

term imposed.  *See Gall*, 552 U.S. at 50.  Even if Mr. Dahda could show some deficiency about

the degree of detail in Judge Vratil's explanation of the reasons for the variance, he hasn't shown

that any such error "constituted a fundamental defect which inherently result[ed] in a complete

miscarriage of justice."  *Addonizio*, 442 U.S. at 185–86 (quotation marks and citation omitted).

The court thus denies relief on this claim.

> 2.    Sufficiency of Evidence Supporting Variance

Mr. Dahda argues that insufficient evidence supported the enhancement for obstruction of

justice.  Again, Mr. Dahda misapprehends the structure of Judge Vratil's sentence at

resentencing.  Judge Vratil imposed a *variance* based on the Section 3553(a) factors—not an

*enhancement* under Section 3C1.1.  The court thus liberally construes Mr. Dahda's challenge to

the sufficiency of the evidence about obstruction as an objection that the upward variance from

the guideline range was substantively unreasonable.

Initially, under both the law of the case doctrine and the mandate rule, the court denies

Mr. Dahda's claim because the Tenth Circuit rejected a substantive challenge to the variance on

the direct appeal after resentencing.[9]  *See Dutch*, 978 F.3d at 1345 (the mandate rule "requires

---

[9]    The Tenth Circuit rejected Mr. Dahda's objection to the variance as follows:

> At resentencing, the district court reapplied the 33-month upward variance "for the reasons that [it] already stated and previously imposed."  The problem with this ruling, according to Roosevelt, is that between Roosevelt's sentencing and resentencing, Ms. Brown filed a motion pursuant to 28 U.S.C. § 2255 and received a 50-month sentence reduction as a result.  As part of Ms. Brown's resentencing, the Government and court treated Ms. Brown as if she did in fact qualify for the safety valve adjustment.  Roosevelt contends he should no longer have received an upward variance for his conduct in threatening Ms. Brown because she ultimately received the safety valve adjustment.
>
> Roosevelt's argument is without merit.  The court originally explained it varied upward on Roosevelt's sentence because he obstructed justice.  While the 33-month variance was calculated in part based on the additional time Ms. Brown was serving, it also accounted for the fact that, had Roosevelt received an obstruction of justice

the district court to strictly comply with any mandate rendered by this court on remand")
(quotation marks and citation omitted); *Entek*, 840 F.3d at 1241 (law of the case doctrine
precludes relitigation of issues "expressly or implicitly" resolved in prior proceedings).

Even if the Tenth Circuit's prior ruling didn't preclude this claim, Mr. Dahda has failed
to satisfy the high standard applied in the habeas context to show that his sentence was
substantively unreasonable.  A district court abuses its sentencing discretion and imposes a
substantively unreasonable sentence "only if the sentence exceeded the bounds of permissible
choice."  *United States v. Barnes*, 890 F.3d 910, 915 (10th Cir. 2018) (quotation marks and
citation omitted).  Under this standard, the appellate court will not overturn a sentence unless it is
"arbitrary, capricious, whimsical, or manifestly unreasonable."  *United States v. Peña*, 963 F.3d
1016, 1024 (10th Cir. 2020) (quotation marks and citation omitted).  This highly deferential
standard reflects that the "sentencing judge is in a superior position to find facts and judge their
import under § 3553(a) in the individual case."  *Gall*, 552 U.S. at 51.  A reviewing court
therefore "must give due deference to the [sentencing] court's decision that the § 3553(a) factors,
on a whole, justify the extent of the variance."  *Id*.  Because Mr. Dahda has raised his claim in
the context of a Section 2255 motion, he must ultimately show that the substantive
unreasonableness of his sentence "constituted a fundamental defect which inherently result[ed]

---

enhancement, his adjusted guideline range would encompass the 33-month upward
variance.  Like the district court explained at the original sentencing, if the court imposed
the obstruction of justice enhancement it believed Roosevelt qualified for, Roosevelt's
guideline range at resentencing would have been 135 to 168 months.  Applying the
court's reasoning at Roosevelt's initial sentencing, the new 141-month sentence he
received at resentencing falls "squarely within the middle of that."  Accordingly, the
district court committed no error, much less plain error, when it again applied a 33-month
upward variance at resentencing.

*Roosevelt Dahda II*, 854 F. App'x at 270.

in a complete miscarriage of justice," *i.e.*, that "render[ed] the entire proceeding irregular and invalid." *Addonizio*, 442 U.S. at 185–86 (quotation marks and citation omitted).

Mr. Dahda argues that Judge Vratil erred by imposing an upward variance because no evidence established that he had intended to obstruct justice, *i.e.*, that his conduct likely would affect a judicial proceeding. Amended Arguments and Authorities (Doc. 3041) at 19–20. Specifically, he argues that his letters did not ask Ms. Brown to testify falsely. *Id*. at 21. At resentencing, Mr. Dahda raised a similar argument, asserting that he "was just being a friend" and "offering legal advice to her." Transcript of Resentencing (Doc. 2738) at 26. Mr. Dahda explained that he essentially advised Ms. Brown that because no mandatory minimum applied under *Alleyne*, "she didn't even need the safety valve." *Id*. at 25. After Mr. Dahda's attorney provided a similar explanation, Judge Vratil noted that Ms. Brown didn't interpret his communications as friendly legal advice. *See id.* at 27–28 ("Well, I think that people have some convenient lapses of memory. And I mean, I think for you to understand the effect that your communications had on Sadie Brown, you know, maybe you should talk to Sadie Brown and you should've seen her in court and you should've seen the way this all played—played out for her."); *see also* Transcript of Sentencing (Doc. 2190) at 37 ("You weren't here at her sentencing, but her best interests is apparently the last thing on [Roosevelt Dahda's] mind. And if anybody should be morally and legally responsible for the time that she's serving, it's him right there. And she forfeited the chance to serve years less in prison because of these letters and the fact that she followed his direction. I know you weren't there but what you're saying is laughable if you had actually been there.").

As Judge Vratil explained at the original sentencing, she did not think that a guideline range sentence would adequately take into account all of Mr. Dahda's relevant conduct because

the PSR did not hold him accountable for obstruction of justice under Section 3C1.1.  *See*

Transcript of Sentencing (Doc. 2190) at 49–50.  Judge Vratil reasonably concluded that Mr.

Dahda's letters ordinarily would warrant an enhancement for obstruction of justice under

Section 3C1.1.  *See* U.S.S.G. § 3C1.1(1) (enhancement for obstruction of justice applies if "the

defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration

of justice with respect to the investigation, prosecution, or sentencing of the instant offense of

conviction"); *see also United States v. McDonald*, 43 F.4th 1090, 1099 (10th Cir. 2022)

("enhancement requires only an attempt and does not require that obstruction actually occur");

*United States v. Fleming*, 667 F.3d 1098, 1107 (10th Cir. 2011) (attempt to obstruct justice

established if defendant "(1) intended to obstruct justice, and (2) committed an act that

constitutes a substantial step toward the obstruction of justice").

Even if Mr. Dahda somehow could show that an enhancement under Section 3C1.1 was

not warranted, he hasn't established that Judge Vratil's decision to impose an upward variance of

six months above the high end of the guideline range for his obstructive conduct was "arbitrary,

capricious, whimsical, or manifestly unreasonable."  *Peña*, 963 F.3d at 1024 (quotation marks

and citation omitted); *see id*. (sentence is substantively reasonable if the sentencing court's

"proffered rationale, on aggregate, justifies the magnitude of the sentence"); *id*. (sentence is

substantively reasonable if "the length of the sentence is reasonable given all the circumstances

of the case in light of the factors set forth in 18 U.S.C. § 3553(a)") (quoting *United States v.*

*Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007).  The court thus denies Mr. Dahda's claim that the

upward variance from the guideline range entitles him to relief under Section 2255.

3.      First Amendment Claim

Mr. Dahda next argues that the court erred in imposing an upward variance because his letters to Ms. Brown were protected speech under the First Amendment.  The government asserts that Mr. Dahda procedurally defaulted on this claim because he didn't raise it on direct appeal. *See* Government's Response to Defendant's Motion to Vacate (Doc. 3054) at 21–23.

A defendant's failure to raise an issue on direct appeal can have important consequences for a Section 2255 motion.  "[W]hen a defendant 'fails to raise an issue on direct appeal, he is barred from raising the issue in a § 2255 proceeding, unless he establishes either cause excusing the procedural default and prejudice resulting from the error or a fundamental miscarriage of justice if the claim is not considered.'"  *United States v. Torres-Laranega*, 473 F. App'x 839, 842 (10th Cir. 2012) (quoting *United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996)); *see also United States v. Frady*, 456 U.S. 152, 165 (1982) ("For this reason, we have long and consistently affirmed that a collateral challenge may not do service for an appeal.").  To establish sufficient "cause" to set aside his failure to appeal the issue directly, Mr. Dahda must "show some external objective factor—such as governmental interference, unavailability of the relevant factual or legal basis, or ineffective assistance of counsel—prevented him from raising the issue on direct appeal."  *Torres-Laranega*, 473 F. App'x at 842 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Alternatively, to satisfy the fundamental miscarriage of justice exception, Mr. Dahda must make "a credible showing of actual innocence."  *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).  To demonstrate actual innocence, Mr. Dahda must establish "factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623–24 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).  To meet this "demanding" standard, *House v. Bell*, 547 U.S. 518, 538 (2006), a petitioner must ordinarily "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  Ultimately, Mr. Dahda must show that absent a constitutional error and in light of all the evidence, "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Black v. Workman*, 682 F.3d 880, 915 (10th Cir. 2012) (alteration in original) (quoting *Schlup*, 513 U.S. at 327).

Mr. Dahda apparently argues that he is actually innocent of the increased sentence because it was based on his protected activity under the First Amendment.  As explained above, Judge Vratil imposed a variance which does not require proof of any specific elements.  In any event, defendant has not shown that the actual innocence exception can apply where he seeks "only a shorter sentence and d[oes] not claim innocence of the offense."  *United States v. Richards*, 5 F.3d 1369, 1371 (10th Cir. 1993) ("person cannot be actually innocent of a noncapital sentence"); *see Jones v. Martin*, 622 F. App'x 738, 739–40 (10th Cir. 2015) (reasonable jurists could not find debatable or wrong district court's conclusion that the fundamental-miscarriage-of-justice exception does not apply to defendant's claim that "he is innocent of his *sentence*") (emphasis in original); *United States v. Glover*, 156 F.3d 1244, 1998 WL 476779, at *2 (10th Cir. Aug. 11, 1998) (claim that defendant in noncapital case should have received lesser sentence does not constitute claim that he is actually innocent or did not commit crime).[10]

Mr. Dahda's claim also lacks substantive merit.  No component of the First Amendment shields a defendant from prosecution or a sentence enhancement for conduct that obstructs justice.  *See United States v. Milk*, 66 F.4th 1121, 1134–35 (8th Cir. 2023) (holding that

---

[10]    Mr. Dahda potentially could assert that his counsel provided ineffective assistance, which would constitute cause for his failure to raise the First Amendment issue on appeal.  For reasons explained below, however, Mr. Dahda has failed to establish that his counsel provided ineffective assistance for not asserting the issue on appeal.

defendant failed to make colorable showing that the First Amendment shields his speech in letters to a witness to discourage and alter his testimony at official proceedings because such speech was designed "to corruptly influence, obstruct and impede the due administration of justice" in violation of 18 U.S.C. § 1503, the federal obstruction-of-justice statute); *United States v. Parker*, 871 F.3d 590, 605 (8th Cir. 2017) (First Amendment does not protect "conspiracy to threaten government witnesses"); *United States v. Jeter*, 775 F.2d 670, 678 (6th Cir. 1985) (defendant's unlawful disclosure of grand jury testimony was "merely another type of ordinary criminal communication in a conspiracy that has been traditionally found undeserving of any First Amendment protection;" obstruction of justice statute is limited to "constitutionally unprotected and purportedly illicit activity"); *see also United States v. Grider*, 617 F. Supp. 3d 42, 52–53 (D.D.C. 2022) ("obstruction is not expressive conduct, much less protected expressive conduct").

For these reasons, the court denies Mr. Dahda's claim that the court erred by imposing an upward variance based on protected speech under the First Amendment

### 4. Evidence for Variance Obtained from Illegal Searches

Mr. Dahda argues that the government illegally acquired the letters by searching his cell and Ms. Brown's cell. Mr. Dahda has not identified that the government seized any evidence from searching his cell that it later used against him. For the search of Ms. Brown's cell, Mr. Dahda does not explain how he has any standing to object to it. *See Jones v. United States*, 362 U.S. 257, 261 (1960) ("one who seeks to challenge the legality of a search [must] establish, that he himself was the victim of an invasion of privacy"); *United States v. Kendall*, 14 F.4th 1116, 1121 n.1 (10th Cir. 2021) (defendant has initial burden of showing that he has Fourth Amendment standing to challenge search). The court therefore denies his claim.

D.      Alleged Recording of Attorney-Client Calls

The government asserts that Mr. Dahda procedurally defaulted his claim because he did not raise it on direct appeal.  *See* Government's Response to Defendant's Motion to Vacate (Doc. 3054) at 23–25.

Mr. Dahda first raised the claim that government counsel had accessed his calls with counsel in 2019, on remand after his first appeal.[11]  Therefore, he could have raised the issue in his appeal from the final sentence.  Mr. Dahda alleges that counsel provided ineffective assistance because he failed to raise this issue on appeal, which—if true—would establish "cause" to set aside his failure to appeal directly.  *Torres-Laranega*, 473 F. App'x at 842 (citing *Murray*, 477 U.S. at 488).  As explained below, however, Mr. Dahda has not established that counsel provided ineffective assistance for failing to raise this issue on appeal.  *See infra* text, Discussion, part III.e.3 (beginning on page 32).  The court thus concludes that Mr. Dahda has procedurally defaulted his claim that the government violated his Sixth Amendment right to counsel.

Even if Mr. Dahda had raised his Sixth Amendment claim in his direct appeal, the claim lacks substantive merit.  In consolidated proceedings arising from the government's accessing recordings of attorney-client phone calls at CCA, Judge Julie A. Robinson of our court

---

[11]      On May 15, 2019, before resentencing, Judge Vratil held a hearing on various motions including the Joint Motion for Fed. R. Cim. P. 16(e) Discovery and Return of Property Pursuant to Fed. R. Crim. P. 41(g) (Doc. 2572).  In that motion, Mr. Dahda asked that the court direct the government "to identify whether attorney-client communications have been provided by CCA in this case and, if so, whether the AUSA or case agents have reviewed the recordings" and further provide "notice of whether any of our client's confidential attorney-client communications are in possession of the USAO in relation to any other case."  *Id*. at 13.  At the hearing, government counsel stated that after a search, she had found no evidence that CCA had recorded any of Mr. Dahda's calls with his attorney.  Transcript of Motions Hearing on May 15, 2019 (Doc. 2617) at 6.  Judge Vratil thus overruled Mr. Dahda's motion.

determined that a defendant raising such claims in a Section 2255 motion must make a threshold showing. *In re CCA Recordings 2255 Litigation v. United States*, No. 19-2491-JAR, 2021 WL 1168963, at *5 (D. Kan. Mar. 26, 2021). Specifically, for audio recordings, a petitioner must show: (1) the telephone recording exists; (2) a given call contains protected attorney-client communication, *i.e.*, communication about legal advice or strategy sought by the client; and (3) an affidavit from defense counsel confirming that the nature and purpose of the call(s) were within the ambit of protected communication, including but not limited to defense preparation, plea negotiations, or review of discovery. *Id.* Judge Robinson set forth this threshold requirement to help eliminate "claims where it was clear that no protected communication existed, for example, where there was no recording at all, the recording was not audible or visible, or the purpose of the conversation was not to seek legal advice or strategy." *United States v. Rowlette*, No. 13-20125-JAR-13, 2021 WL 1736876, at *8 (D. Kan. May 3, 2021).

Mr. Dahda nonetheless continues to speculate that the government recorded and accessed his calls with counsel. But his speculation is no substitute for evidence of such calls. Mr. Dahda and his former counsel Edward K. Fehlig, Jr. advised the FPD of Mr. Dahda's suspicion, but the FPD has not entered an appearance on his behalf or provided him with any evidence that government counsel recorded or accessed his privileged calls with counsel.[12] Mr. Dahda suggests that shortly before trial, the case agent sent government counsel an email which, in his view, suggests that the government did record and access his phone calls with counsel. *See* Attachment A to Government's Response (Doc. 3054), email dated May 11, 2014. In May and August of 2019, before resentencing, government counsel sent a copy of this email to Mr. Fehlig.

---

[12]    After reviewing jail calls beginning on January 1, 2010, the FPD identified 104 clients with potential claims based on the recording of attorney-client calls at CCA. *See* Transcript of Motions Hearing of October 9, 2018 (ECF Doc. 673 in *United States v. Carter*, D. Kan. No. 16-20032-02-JAR) at 1509–49. Mr. Dahda does not assert that he is one of the 104 potential call clients that the FPD identified.

Based on the FPD's prior inquiry and government counsel's representations, it appears that the government did not record and access any calls between Mr. Dahda and his counsel.

Mr. Dahda argues that the court should hear testimony from Mr. Fehlig to confirm that he received a copy of the May 11, 2014 email and when. Reply (Doc. 3057) at 4. Mr. Dahda has the burden to make a threshold showing that a telephone recording of protected attorney-client communication exists. *In re CCA Recordings*, 2021 WL 1168963, at *5. Mr. Dahda does not allege that Mr. Fehlig provided ineffective assistance of counsel. Indeed, for the past two years, Mr. Fehlig has represented Mr. Dahda in a forfeiture dispute that's part of this case, which the parties only recently resolved. *See* United States' Motion for Court's Acceptance of Settlement Agreement (Doc. 3064) filed October 25, 2023. In this sense, if Mr. Fehlig possessed any information which established that the government recorded protected attorney-client calls (or that he never received the May 11, 2014 email), Mr. Dahda had every opportunity to ask Mr. Fehlig to provide these facts in an affidavit.

Mr. Dahda simply speculates that because the government accessed his non-privileged calls with others, it must have accessed his calls with counsel. Reply (Doc. 3057) at 4–5. The FPD and Mr. Fehlig apparently have found no evidence which would support such a claim.[13] Absent some evidence or credible allegation that the government recorded and listened to Mr. Dahda's calls with counsel, Mr. Dahda cannot establish that he is entitled to relief under Section 2255. *See United States v. Sloan*, No. 13-40025-JAR-3, 2021 WL 3617312, at *5 (D. Kan. Aug. 16, 2021) (dismissing Section 2255 motion based on petitioner's conclusory

---

[13]     Under Rule 41(g), Mr. Dahda seeks return of any recordings of his attorney-client calls. *See* Renewed Motion for Return of Property Pursuant to Federal Rule of Criminal Procedure 41(g) (Doc. 3027). The government already responded to defendant's request in 2019 and explained that it had no such recordings to return. At that time, government counsel explained that if the government finds any attorney client communications involving Roosevelt or Los Dahda in its possession, or any derivative evidence reflecting such communications, it promptly will advise defense counsel and the court. Because the government does not possess the requested property, the court dismisses his Rule 41(g) motion.

assumption and speculation that because government acquired and listened to calls in some other

cases, government counsel obtained his attorney-client recordings and listened to them); *United*

*States v. Avalos*, No. 13-20026-JAR-01, 2021 WL 1426771, at *4 (D. Kan. Apr. 15, 2021)

(summarily dismissing Section 2255 motion where, after review of the recordings turned over by

the government, FPD did not enter appearance for petitioner or supplement his pro se motion and

defendant did not present evidence that a recording of any conversation or meeting with counsel

exists or otherwise satisfied the threshold criteria for a protected communication set forth in

*Black*).  Therefore, the court denies Mr. Dahda's Amended Motion to Vacate on this ground.

      E.      <u>Ineffective Assistance of Counsel</u>

      The Sixth Amendment provides that in "all criminal prosecutions, the accused shall enjoy

the right . . . to have the assistance of counsel for his defense."  U.S. Const. amend. VI.  And the

"right to counsel is the right to the effective assistance of counsel."  *Strickland v. Washington*,

466 U.S. 668, 686 (1984).

      To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy

*Strickland*'s two-part test.  First, the petitioner "must show that counsel's performance was

deficient."  *Id.* at 687.  This requires a showing that counsel "made errors so serious that counsel

was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*

Second, the petitioner "must show that the deficient performance prejudiced the defense."  *Id.*  In

other words, "the defendant must show that his counsel's performance 'fell below an objective

standard of reasonableness,' and that the deficient performance resulted in prejudice."  *United*

*States v. Rodriguez-Rivera*, 518 F.3d 1208, 1216 (10th Cir. 2008) (quoting *Strickland*, 466 U.S.

at 688).  To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy both

*Strickland* prongs.  *United States v. Orange*, 447 F.3d 792, 796–97 (10th Cir. 2006).  A failure to prove either one is dispositive.  *Id.* at 797.

In the context of a claim that counsel should have raised additional or different issues on appeal, defendant faces a heavy burden to overcome the presumption that counsel rendered effective assistance.  *See Strickland*, 466 U.S. at 690 ("court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment").  Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).

To determine whether counsel performed deficiently by omitting an argument, the court examines the merits of the omitted argument.  *Hooks v. Ward*, 184 F.3d 1206, 1221 (10th Cir. 1999).  If the omitted argument is "so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance."  *Cargle v. Mullin*, 317 F.3d 1196, 1202–03 (10th Cir. 2003).  In other words, counsel's failure to raise an argument that is a "dead-bang winner" directly establishes deficient performance.  *United States v. Challoner*, 583 F.3d 745, 749 (10th Cir. 2009) (quoting *United States v. Cook*, 45 F.3d 388, 395 (10th Cir. 1995)).  A "dead-bang winner" is "an issue which was obvious from the trial record *and* one which would have resulted in a reversal on appeal."  *Id.* (quoting *Cook*, 45 F.3d at 395).  If the omitted argument is "not so compelling," the court evaluates the merits of the omitted argument "relative to the rest of the appeal" and gives "deferential consideration . . . to any professional judgment involved in its omission."  *Cargle*, 317 F.3d at 1202.  To establish prejudice in this context, defendant must show a reasonable

probability that but for counsel's failure to raise an issue, the appeal would have produced a different outcome.  *See Jones v. Wy. State Penitentiary Warden*, 595 F. App'x 826, 828 (10th Cir. 2014).  A "reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  Defendant bears the burden to show that he is entitled to relief by a preponderance of the evidence.  *Sa'Ra v. Raemisch*, 536 F. App'x 783, 787–88 (10th Cir. 2013).

Mr. Dahda argues that his counsel provided ineffective assistance (a) at the first sentencing and the ensuing appeal and (b) in the 2019 appeal after resentencing.

The court addresses each of his claims, in turn, below.

### 1.  Objections and Appeal Related to Section 851 Enhancement

Mr. Dahda argues that Mr. Bennett and Mr. Luedke provided ineffective assistance of counsel because (a) at or before sentencing, they did not inform him about "the complete consequences of the government's filing of an enhancement information [under 21 U.S.C. § 851] and how that would affect and impact Petitioner's statutory maximum sentence" on Counts 43, 49, 56, and 73; (b) they did not maintain his objections to the Section 851 enhancement at sentencing; and (c) they did not appeal the Section 851 enhancement.  Amended Petition to Vacate (Doc. 3032) at 9; Amended Arguments and Authorities (Doc. 3041) at 25–26.

Addressing, first, Mr. Dahda's claim that counsel failed to inform him of the consequences of the government's notice under Section 851, the record conclusively shows that he understood the effect of Section 851 on the statutory ranges for each count.  The Superseding Indictment set forth the enhanced penalties on each count if Mr. Dahda had a "prior conviction for a felony drug offense."  Sealed Superseding Indictment (Doc. 462) at 58–62.  On March 7, 2013, more than one year before trial, the government filed a notice that it intended to rely on his

prior drug felony conviction in District of Kansas Case Number 04-20060-01.  *See* Amended

Enhancement Information (Doc. 885).  The PSR also informed Mr. Dahda of the enhanced

statutory penalties on Counts 1, 43, 49, and 56.  *See* PSR (Doc. 2043), ¶ 212.  Indeed, as

explained above, before sentencing, defense counsel objected to use of his prior conviction to

enhance his statutory ranges.  *See* Defendant Roosevelt Rico Dahda's Response to the

Government's 21 U.S.C. § 851 Enhancement Information and His Request for an Amendment

Thereto (Doc. 2035) at 2–8 (objecting because (1) the date of his prior conviction was after the

start of the conspiracy in this case, (2) the government's filing of the enhancement constituted a

breach of the plea agreement in the 2004 case, and (3) under the doctrine of judicial estoppel, the

government could not seek an enhancement against Mr. Dahda).  Mr. Dahda never identifies the

additional information about his Section 851 enhancement that counsel failed to disclose to him,

or even how the failure to disclose any such information prejudiced him.  The court thus denies

Mr. Dahda's claim that counsel provided ineffective assistance because they did not inform him

of the consequences of the government's notice under Section 851.

Mr. Dahda next claims that counsel provided ineffective assistance because they did not

maintain his objections to the Section 851 enhancement at sentencing.  Mr. Dahda has not

identified the substantive merit of any of the objections that counsel asserted or any other

potential objection.  On this record, he hasn't shown that counsel's performance at sentencing

related to the Section 851 enhancement was deficient or prejudicial.

Finally, Mr. Dahda claims that counsel provided ineffective assistance because they did

not appeal the enhancement of his sentence under Section 851.  Again, Mr. Dahda has not shown

that any of the objections that counsel asserted—or any other potential objection they could have

asserted—had substantive merit.  The court thus denies Mr. Dahda's final claim of ineffective assistance related to the Section 851 enhancement.

All of Mr. Dahda's claims of ineffective assistance related to the Section 851 enhancement suffer one other fatal flaw—they all challenge counsel's performance at the first sentencing and his appeal of that initial sentence.  As already explained, however, the Tenth Circuit vacated his original sentence so Mr. Dahda had another opportunity before sentencing to challenge the Section 851 enhancement.  Mr. Dahda doesn't explain how counsel's purported deficient performance at the initial sentencing in 2015 affected his ability to understand and object to the Section 851 enhancement at the resentencing in 2019.  He therefore cannot establish that counsel's performance related to the Section 851 enhancement prejudiced him.  *See United States v. Creighton*, 786 F. App'x 743, 749–50 (10th Cir. 2019) (rejecting claim that attorney provided ineffective assistance in failing to challenge the sentencing court's omission of the § 851(b) colloquy because he did not show how this omission "had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect" (quoting *Bagby*, 696 F.3d at 1088)).

2.   Objection to Search of Jail Cells and Use of Evidence to Support Variance

Next, Mr. Dahda argues that at the first sentencing, his attorneys—Mr. Bennett and Mr. Luedke—provided ineffective assistance because they did not investigate and object to the illegal searches of his cell and Ms. Brown's cell, or use of the letters found in Ms. Brown's cell to support a 33-month upward variance of Mr. Dahda's sentence.  Amended Arguments and Authorities (Doc. 3041) at 25; Amended Petition to Vacate (Doc. 3032) at 9.  Mr. Dahda has not shown that the government seized evidence from searching his cell that it later used against him.

31

Therefore, he cannot show that counsel's failure to object to the search of his cell was deficient or prejudicial.

For the search of Ms. Brown's cell, as explained already, Mr. Dahda never explains how he had standing to object to it. *See Jones v. United States*, 362 U.S. at 261 ("one who seeks to challenge the legality of a search [must] establish, that he himself was the victim of an invasion of privacy"); *Kendall*, 14 F.4th at 1122 (defendant has initial burden of showing that he has Fourth Amendment standing to challenge search). Absent standing, counsel's failure to object to the search was not deficient or prejudicial.

Mr. Dahda also claims that counsel should have objected to the 33-month variance at the first sentencing because his letters to Ms. Brown were protected speech under the First Amendment. As explained above, Mr. Dahda hasn't shown that the First Amendment protects his letters that threatened Ms. Brown to testify falsely and basically coached her how to obstruct justice. The court thus denies Mr. Dahda's claim for relief.

### 3.   Failure to Appeal Government's Recording of Attorney-Client Calls

Mr. Dahda claims that in his 2020 appeal, his appellate counsel—Mr. Fishman— provided ineffective assistance because he did not argue that the government recorded and listened to his conversations with counsel.

As noted above, appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. at 288 (citation omitted). Indeed, the "process of 'winnowing out weaker arguments and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. at 751–52).

Mr. Dahda neither alleges nor explains how a challenge based on the allegation that the government recorded and listened to his calls with counsel was a "dead-bang winner."  So the court gives "deferential consideration" to appellate counsel's decision to omit this particular argument.  *Cargle*, 317 F.3d at 1202.  Appellate counsel raised five issues on appeal:  (1) the district court erred in sentencing Mr. Dahda under § 841(b)(1)(C) rather than § 841(b)(1)(D), (2) the district court erred by applying the Section 851 enhancement to the statutory maximum, (3) the district court erred in applying the 33-month upward variance, (4) the district court erred in calculating the amount of marijuana attributable to Mr. Dahda, and (5) the district court did not make adequate findings for the special conditions of supervised release.  Brief of Defendant-Appellant, 2020 WL 3498273 (10th Cir. June 25, 2020).  As explained above, even today, Mr. Dahda hasn't shown that the government recorded and listened to his calls with counsel.  The arguments that counsel raised on appeal appear much stronger than the theoretical argument that the government may have recorded Mr. Dahda's calls with counsel.  Appellate counsel's decision to omit this argument on appeal was not deficient or prejudicial.  The court thus denies this claim for relief.

### IV.    Conclusion

The court concludes that the records of the case conclusively show that Mr. Dahda is not entitled to relief on the claims asserted in his motion.  28 U.S.C. § 2255(b).  Thus, the court is not required to hold a hearing on his motion.  *See United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995).  The court also denies Mr. Dahda's request for discovery as moot.

Rule 11 of the Rules Governing Section 2255 Proceedings requires the court to "issue or deny a certificate of appealability when it enters a final order adverse" to the petitioner.  A court may grant a certificate of appealability only "if the applicant has made a substantial showing of

the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner satisfies this burden if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quotation marks and citations omitted).  The court concludes that no reasonable jurist would find the court's assessment of Mr. Dahda's claims debatable or wrong.  *See id.*  The court thus declines to issue a certificate of appealability for Mr. Dahda's claims in his Amended Petition to Vacate or Set Aside a Federal Sentence Pursuant to 28 U.S.C. § 2225 (Doc. 3032).

**IT IS THEREFORE ORDERED BY THE COURT THAT** Roosevelt Dahda's Amended Petition to Vacate or Set Aside a Federal Sentence Pursuant to 28 U.S.C. § 2225 (Doc. 3032) is denied.

**IT IS FURTHER ORDERED THAT** a certificate of appealability for the ruling on Mr. Dahda's Section 2255 motion is denied.

**IT IS FURTHER ORDERED THAT** Roosevelt Dahda's Motion for Judicial Notice Pursuant to Fed. R. Evid. 201 (Doc. 3025) is denied.

**IT IS FURTHER ORDERED THAT** Roosevelt Dahda's Renewed Motion for Return of Property Pursuant to Federal Rule of Criminal Procedure 41(g) (Doc. 3027) is dismissed.

**IT IS FURTHER ORDERED THAT** Petitioner's Second Motion for Judicial Notice Pursuant to Federal Rule of Evidence 201 (Doc. 3033) is denied.

**IT IS FURTHER ORDERED THAT** Petitioner's Motion Seeking Leave to Take Discovery Pursuant to Habeas Rule 6 (Doc. 3035) is denied as moot.

**IT IS FURTHER ORDERED THAT** Roosevelt Dahda's Third Request for Judicial Notice In Support of Amended Petition Pursuant to Federal Rule of Evidence 201 (Doc. 3040) is denied.

**IT IS SO ORDERED.**

**Dated this 22nd day of November, 2023, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**