IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | Case No. 12-20083-02-DDC |
| v. | |
| **ROOSEVELT RICO DAHDA (02)**, | |
| Defendant. | |

## MEMORANDUM AND ORDER

Defendant Roosevelt Rico Dahda has filed a pro se Motion for Early Termination of Supervised Release (Doc. 3095). As its title implies, this pro se filing asks the court to end Mr. Dahda's term of supervised release (TSR) early. The court construes this pro se filing liberally.[1] The government responded (Doc. 3097) in opposition and then, the Federal Public Defender entered the fray. The FPD supported Mr. Dahda's request, filing a Reply (Doc. 3100). Naturally, this Reply doesn't get the same liberal construction as defendant's pro se filing.

As one might anticipate in a case with more than 3,000 docket entries, summarizing Mr. Dahda's case is more challenging than normal. But the Circuit's latest merits opinion—one stemming from defendant's appeal from the second of the three iterations of Mr. Dahda's sentence—captures the case's procedural essence:

---

[1] Because plaintiff proceeds pro se, the court construes his filings liberally. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."). But plaintiff's pro se status doesn't excuse him from complying with the court's rules or facing the consequences of noncompliance. *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

> Roosevelt Dahda and 42 others faced criminal charges related to a marijuana-distribution network between California and Kansas. A jury convicted Roosevelt on ten counts arising out of this operation. The district court sentenced him to a total of 201 months' imprisonment as follows: 201 months on Counts 1 and 56; 120 months on Counts 43, 49, and 73; and 48 months on Counts 42, 45, 53, 55, and 70, all to be served concurrently. The court also ordered forfeiture in the amount of $16,985,250.00. Roosevelt appealed both his conviction and sentence to this court. *See [United States v.] Dahda*, 852 F.3d [1282,] 1287 [(10th Cir. 2017)]. We affirmed his conviction but remanded for resentencing "based on the error in calculating the amount of marijuana attributable to Roosevelt." *Id.* at 1298.
>
> On remand, the district court resentenced Roosevelt to a total of 141 months' imprisonment as follows: 141 months on Counts 1 and 56; 120 months on Counts 43, 49, and 73; and 96 months on Counts 42, 45, 53, 55, and 70, all to run concurrently. To reach this revised sentence, the district court adopted the presentence report, which provided the following explanation. First, the PSR grouped the counts of conviction pursuant to U.S.S.G. § 3D1.2(d). It then attributed 505.8 kilograms of marijuana to Roosevelt, corresponding with a base offense level of 26. The PSR added three levels because Roosevelt was a manager or supervisor in the criminal venture, pursuant to U.S.S.G. § 3B1.1(b). Based on a total offense level of 29 and a criminal history category of 3, the PSR calculated an advisory guideline range of 108 to 135 months' imprisonment. The district court varied upward from the low end of the guideline range by 33 months. Thus, the court imposed a 141-month sentence on Counts 1 and 56, and the lower statutory maximum sentences on the remaining counts, all to run concurrently.

*United States. v. Dahda*, 854 F. App'x, 267, 267–68 (10th Cir. 2021) (footnote omitted).[2] Each version of Mr. Dahda's sentence included a TSR with a controlling term lasting six years or more. *See* Doc. 2087 (Judgment); Doc. 2192 (Amended Judgment); Doc. 2714 (Amended Judgment). *See also* Doc. 3072 (granting motion for sentence reduction under 18 U.S.C. § 3582(c)(2), reducing custody component of sentence but not disturbing TSR). In sum, when Mr. Dahda's TSR began in February 2024, it was scheduled to end in early 2030.

But one year and four days into his TSR, Mr. Dahda filed the current motion. *See* Doc. 3095 (filed February 5, 2025). This motion arrived four days after the earliest date when the governing statute permitted him to file a motion to terminate early. *See* 18 U.S.C. § 3583(e)(1).

---

[2] The court infers that the Circuit's opinion referred to Mr. Dahda by his first name because his brother, Los Rovell Dahda, also was charged as a co-defendant.

2

The United States opposes this request. Doc. 3097 at 2. Mr. Dahda's counsel reports that the United States Probation Office supports his request, Doc. 3100 at 1, and the court has confirmed that report with his supervising officer.

### *Legal Standard and the Parties' Arguments*

The court enjoys substantial discretion when it decides whether to terminate a TSR ahead of its natural expiration. *See* 18 U.S.C. § 3583(e)(1). The controlling statute directs the sentencing court to decide whether early termination "'is warranted by the conduct of the defendant released and the interest of justice.'" *See Rhodes v. Judiscak*, 676 F.3d 931, 933 (10th Cir. 2012) (quoting 18 U.S.C. § 3583(e)(1)). The Sentencing Guidelines echo this theme, directing courts to conduct an "individualized assessment of the need for ongoing supervision" and decide whether "termination is warranted by the conduct of the defendant and [is] in the interest of justice." U.S.S.G. § 5D1.4(b). But this discretion isn't boundless.

To the contrary, § 3583(e)(1) provides that the court may terminate a motion "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." The specified factors are: "the nature and circumstances of the offense and the history and characteristics of the defendant;" the need "to afford adequate deterrence to criminal conduct;" the need to "protect the public from" defendant's "further crimes;" the need to provide "defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective" fashion; the "kinds of sentence and the sentencing range established" for defendant under the Guidelines in effect when the defendant is sentenced; "any pertinent policy statement" in effect when defendant is sentenced; "the need to avoid unwarranted sentence disparities;" and the "need to provide restitution" to the offense's victims. 18 U.S.C. § 3553(a).

Commentary to the recently revised Guidelines supplements this statutory list of considerations. *See* U.S.S.G. § 5D1.4 cmt. n. 1(B). It provides the following factors for the court to consider: any history of court-reported violations during the TSR; defendant's ability to self-manage lawfully; defendant's substantial compliance with his conditions; defendant's engagement in prosocial activities and any prosocial support supporting lawfulness beyond the TSR; a demonstrated reduction in risk level during the TSR; and whether termination, when considering a variety of circumstances, will jeopardize public safety. *Id.*

The parties hold different perspectives about how these factors cut here. For instance, defendant argues that he has performed splendidly on supervision—he "has consistently held employment since he was furloughed to the Residential Reentry Center in Leavenworth in September of 2023." Doc. 3095 at 3. Thus, he contends, his history and characteristics favor early termination.

The government sees Mr. Dahda quite differently. It doesn't quarrel with his conduct lately. But it points out that this version of Mr. Dahda unfairly truncates his larger history and characteristics, as well as the nature and circumstances of his offenses. Also, it argues that the defendant remains the same person who violated the conditions that applied to him during an earlier TSR in one of his earlier criminal cases—one that once pended before our court, *United States v. Dahda*, No. 04-20060. And indeed, he did. *See* Revocation Judgment, *United States v. Dahda*, No. 04-20060 (D. Kan. Oct. 6, 2015), Doc. 93 (sentencing Mr. Dahda to 30 months in prison for his TSR violations consecutive to his sentence in this 2012 case). The government also highlights Mr. Dahda's obstruction of justice in this case and his misleading statements in a 2022 compassionate-release motion. Doc. 3097 at 3–4.

*Analysis*

After considering all eight of the pertinent factors in § 3553(a) and the newly adopted factors in § 5D1.4, the court concludes that those factors, weighed together and on balance, support termination. It's a relatively close question because, as Mr. Dahda argues persuasively, several favor a finding that he has demonstrated he can live life in a law-abiding community. Let there be no doubt. Mr. Dahda has progressed. His consistent employment and dedication to educational programs and vocational training impress the court. These accomplishments provide just enough of a track record for the court to conclude that he needs supervision no longer. The same goes for timing. As noted earlier, Mr. Dahda filed his motion to terminate about four days after he first was eligible. That was too soon. But now that he is quickly approaching the one-third mark of his TSR, Mr. Dahda has accumulated a sufficient track record. And in that interim period, Mr. Dahda has continued to comply with his conditions. The court understands the government's concerns (and it shares them in part). But most of the government's concerns center on conduct for which Mr. Dahda already has received punishment—*i.e.* revocation of his TSR in his earlier case and an upward variance at sentencing for obstructing justice in this case. The court thus concludes that the balance of factors favors Mr. Dahda.

A final thought for Mr. Dahda: The court grants this motion even though the defendant's criminal history has concerned the court. Will he continue to live a prosocial, lawful existence after his TSR ends? Certainly, his performance during his TSR shows that Mr. Dahda *can* live lawfully. *But will he*? Mr. Dahda—and Mr. Dahda alone—now must answer that question.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Roosevelt Rico Dahda's Motion for Early Termination of Supervised Release (Doc. 3095) is granted for reasons explained in this Order.

**IT IS SO ORDERED.**

**Dated this 10th day of December, 2025, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**
